John T. Gordon and Daniel P. Gordon, trading as H. Gor-
don & Sons, Appellants, v. Albert E. Norton, owner
or reputed owner, James Hood, Contractor, and Mary S.
Chain, Terre-Tenant.

*Practice, C. P.—Reservation of point of law—Judgment non obstante
veredicto.*

Where judgment is entered for the defendant non obstante veredicto
correct practice requires two things, first, that the facts shall clearly ap-
pear by agreement, case stated or specific findings of the jury, so that they
do not have to be searched for, but stand out clearly on the record ; and,
secondly, that there should be an opinion of the court expressing the
grounds of its action.

*Mechanic's lien—Contract—Right of subcontractor to file lien.*

A building contract provided that the contractor should "execute and
deliver a full and complete release of all liens whatsoever " to any single
lot on being paid the proportionate part of his contract price, and that he
would not file any lien himself, and would "not suffer or permit any
lien, attachment or other incumbrance, under any laws of this state, or
otherwise, by any person or persons whatsoever, to be put or remain upon
the said sixty-five buildings or upon any of them, for any work or labor
done or material furnished, under or in pursuance of this contract, or by
reason of any other claim or demand against him that can or might in
any manner or way affect, impair, or take priority to the lien of the sixty-
five mortgages executed in favor of the German-American Title and
Trust Company, as being upon each of the sixty-five respective prem-
ises." *Held,* that under the contract subcontractors had a right to file
liens for their work or material.

*Liens—Mechanics' liens—Apportionment of claim.*

Where there are blocks of buildings so differing in size, style, material,
location or time of erection that the materials or labor going into their con-

struction may be readily distinguished and ascertained, the lien claimant may, if he chooses, file a separate claim against each block, apportioned among its own constituent houses, although all the blocks are erected by the same contractor under one contract with the same owner.

Argued Jan. 26, 1898.    Appeal, No. 349, Jan. T., 1897, by plaintiffs, from judgment of C. P. No. 1, Phila. Co., June T., 1892, No. 151, M. L. D. non obstante veredicto.    Before STERRETT, C. J., WILLIAMS, MCCOLLUM, MITCHELL and FELL, JJ. Reversed.

Scire facias sur mechanic's lien.    Before BRÉGY, J.

At the trial it appeared that on March 29, 1890, Albert E. Norton purchased a lot of ground bounded by Fortieth street, Fairmount avenue, Aspen street and Union street, in the city of Philadelphia.

On September 22, 1890, he laid out a street called Sloan street through the lot, subdivided the tract into sixty-five smaller lots, and on the same date executed sixty-five separate mortgages, one on each of said smaller lots, describing the Fortieth street lots and the Sloan street lots as bounding on Sloan street.    (See diagram on next page.)

On each of the sixty-five lots there was erected a brick dwelling house.

Subsequently on May 5, 1891, Norton executed a deed of dedication to the city for the bed of Sloan street, and it was put upon the plan of the city on November 5, 1891.

On September 22, 1890, Norton entered into a contract with James Hood for the erection by Hood of sixty-five dwelling houses on the above-mentioned sixty-five lots of ground, containing, inter alia, the following provisions, viz :

"2. . . . . It is also agreed that the said James Hood shall execute and deliver a full and complete release of all liens whatsoever to one lot and building thereon, on payment to him of the full one-sixty-fifth part of the unpaid part of the aforesaid contract. . . .

"11. The said James Hood furthermore agrees and binds himself that he will not himself file any lien for work and labor done and materials furnished towards the erection of said sixty-five houses or any of them, and that he will not suffer or permit any lien, attachment or other incumbrance under any laws

of this state or otherwise by any person or persons whatsoever
to be put or remain upon the said sixty-five buildings, or upon

any of them, for any work or labor done or material furnished,
under or in pursuance to this contract or by reason of any other
claim or demand against him that can or might in any manner
or way affect, impair or take priority to the lien of the sixty-
five mortgages executed in favor of the German-American Title
and Trust Company as being upon each of the sixty-five re-
spective premises."

On August 12, 1890 (prior in date to the agreement between

Hood and Norton, but reciting that Hood has contracted to erect the sixty-five buildings on said lots), James Hood entered into a contract with plaintiffs to do all the brickwork on said sixty-five houses, to be paid for, seventy-three per cent, as the work progressed, and containing, inter alia, the following provisions, viz:

" And the said parties of the second part herein (plaintiffs) in consideration of the said first mentioned sum of 73 per centum agree to waive all right to file a lien that will in any way affect said above mentioned mortgages. . . .

" It is also mutually understood and agreed that, if the said James Hood pay to the said parties of the second part the full one-sixty-fifth part of the unpaid portion of the aforesaid contract price herein agreed upon, the said parties of the second part shall and will execute and deliver a full and complete release of all liens whatsoever to one lot and building thereon for every payment."

On the trial an agreement was entered into as to many of the facts as follows:

" 7. The number of bricks laid on each Fairmount avenue house by plaintiff is 31,742; on each Aspen street and Union street house 20,485; and on each Sloan street house 24,513."

The lien in question was filed as a joint apportioned lien against forty-five houses in the block, bounded on the north by Aspen street, on the east by Union street, on the south by Fairmount avenue, and on the west by Sloan street. A writ of scire facias was issued on apportionment No. 32 of this lien, being against a house on the east side of Sloan street.

Another joint apportioned lien under the same contract, was filed against twenty houses bounded on the north by Aspen street, on the east by Sloan street, on the south by Fairmount avenue, and on the west by Fortieth street.

The court charged as follows:

This claim depends upon a number of facts, all of which have been agreed upon save one, and that is in dispute, and that is whether any work was done on these houses within six months from the time of the filing of the lien. It makes no difference what the facts are; if no work was done within six months

from the filing of the lien, that is an end of it, of course, because they cannot file a lien more than six months after some work has been done on the premises, and if you come to the conclusion that no work was done or that work was not done on this house within six months from the filing of the lien, that is an end of the plaintiffs' case, and therefore I will ask you to find that fact, and we will reserve the other questions which have been agreed upon by counsel for final consideration, with the one question which you are to settle, whether upon the facts agreed upon and the one found by you, the judgment should be for the plaintiffs or for the defendants.

I have put it in this way, and instead of rendering the usual verdict for the plaintiffs or verdict for the defendants, you will sign this paper in the shape that you agree : "We find the plaintiffs did"—leaving a blank for the word "not"—"do the work on the house in question within six months of the time of filing the lien."

If you believe the plaintiffs did do work on this house you can take this paper as it is and sign it; if you believe they did not do the work within six months, just put in the word "not."

The effect of the other legal questions which have been agreed upon I will reserve for final decision by the court in banc.

The verdict was as follows :

We find the plaintiffs did do work on the house in question within six months of the time of filing the lien.

The court entered judgment for defendants, non obstante veredicto.

*Error assigned* was entry of judgment for defendants.

*E. Cooper Shapley*, for appellants.—The contract between Norton and Hood does not prevent a subcontractor under Hood from maintaining a mechanic's claim: Nice v. Walker, 153 Pa. 123 ; Creswell v. O'Brien, 156 Pa. 172; Lucas v. O'Brien, 159 Pa. 535 ; Fidelity, etc., Assn. v. Jackson, 163 Pa. 208.

Conveying lots according to a plan, and bounding them on a private street, is a dedication of the street to public use : Transue v. Sell, 105 Pa. 604 ; Trutt v. Spotts, 87 Pa. 339.

The sale of lots according to a plan which shows them to be

on a street implies a grant or covenant to the purchaser that the street shall be forever open to the use of the public, and operates as a dedication of them to public use : Quicksall v. City, 177 Pa. 301 ; Baker v. Chester Gas Co., 73 Pa. 117 ; In re Story Street, 11 Phila. 456 ; West Phila. Brick Co. v. Johnson, 39 W. N. C. 509.

The decisions on the subject of the right to file joint apportioned liens, and those on which the Superior Court relied in Brick Co. v. Johnson, are not applicable to facts such as exist here.

There is a difference between an alley and a street in more than size. An alley can never be opened by the municipality, nor accepted by it by dedication as an alley. That it must rise to the requirements of a street shows the difference : Kline's App., 93 Pa. 422 ; Atkinson v. Shoemaker, 151 Pa. 153.

*Robert H. Hinckley*, with him *Leon H. Folz*, for appellees, cited Nice v. Walker, 153 Pa. 123 ; Creswell v. O'Brien, 156 Pa. 172 ; West Phila. Brick Co. v. Johnson, 39 W. N. C. 509 ; Brick Co. v. Johnson, 162 Pa. 199 ; Atkinson v. Shoemaker, 151 Pa. 153.

OPINION BY MR. JUSTICE MITCHELL, May 16, 1898 :

Where judgment is entered for the defendant non obstante veredicto it has been frequently said by this Court that correct practice requires two things, first, that the facts shall clearly appear by agreement, case stated or specific findings of the jury, so that they do not have to be searched for, but stand out clearly on the record ; and, secondly, that there should be an opinion of the court expressing the grounds of its action. The jurisdiction to enter a judgment against a verdict is special and exceptional, and every step necessary to justify its exercise should plainly appear. In the present case there were two grounds relied on by the defendants in asking judgment in their favor, and the silence of the court leaves us no indication as to which the decision was rested on, or whether upon both. A very little extra trouble on the part of the court at the time by stating its reasons would not only have been just to itself, but would have saved a great deal of labor later to counsel and to us.

The first point made by defendants is that the right to a lien

had been waived by the contractor for himself and all subcontractors under him. This contention cannot be sustained. The contract provides that the contractor shall "execute and deliver a full and complete release of all liens whatsoever" to any single lot on being paid the proportionate part of his contract price, and further he binds himself not to file any lien himself, and that he "will not suffer or permit any lien, attachment or other incumbrance, under any laws of this state, or otherwise, by any person or persons, whatsoever, to be put or remain upon the said sixty-five buildings, or upon any of them, for any work or labor done or material furnished under or in pursuance to this contract, or by reason of any other claim or demand against him, that can or might in any manner or way affect, impair, or take priority to the lien of the sixty-five mortgages executed in favor of the German-American Title and Trust Company, as being upon each of the sixty-five respective premises." This is not such a covenant as will prevent the filing of liens under the rule ascertained and intended to be finally settled in Nice v. Walker, 153 Pa. 123, and almost identical language has been so determined in Creswell Iron Works v. O'Brien, 156 Pa. 172, and Lucas v. O'Brien, 159 Pa. 535. This result follows from the language of the agreement, independent of the further qualification in the concluding clause of the sentence which might well be taken to indicate that the whole provision was meant as a mere stipulation that no liens filed should be held to take priority or affect the mortgages. The contract between the plaintiffs and Hood, the general contractor, was executed before Hood's contract with the owner, and contained this stipulation in equally explicit but briefer form. Hood's contract with the owner was also executed before the mortgages, but the latter were in contemplation, and both contracts plainly intended to give them priority. It is not necessary however to dwell on this feature of the contracts. They did not take away the right of subcontractors to liens for their work or materials, under the settled rule of our cases, and the judgment cannot be sustained on this ground.

The defendants' second ground of objection to the lien is that it is filed against forty-five houses only, although there were sixty-five included in the contract, all of which they claimed to be adjoining in the sense of that word as used in our cases.

An important inquiry in the determination of that fact is whether or not Sloan street is to be considered as a public street at the time the work was begun. The court below held that it was not, and though it is not entirely clear that the evidence would not require the submission of that question to the jury, yet we may for the present assume that it was rightly decided. The case then was this: a square of ground bounded by four public streets was being improved by the owner who laid out an intermediate street which he called Sloan, and by a contract with one contractor for the whole built sixty-five houses, in five rows or blocks, one fronting on each of the public streets and one on Sloan street. Four of the blocks, including that on Sloan street adjoined at the rear, their yards being separated only by private alleys. The row of twenty on Fortieth street was on the other side of Sloan street and would be separated from the rest by it when opened. Plaintiffs having furnished materials to the whole operation, filed two apportioned liens, one against the twenty houses on Fortieth street, and the other against the forty-five on the lot bounded by Sloan, Aspen, Union and Fairmount avenue. The defendants' contention is that this could not be done; that the claimant must either make one apportioned claim against the whole sixty-five houses or a separate claim against each.

Although the apportionment of claims began even before the act of 1831, this question is still open. It has been approached and perhaps touched in previous cases, but always from the other side, upon inquiry what the lien claimant may include. What he must include has not heretofore been definitively settled since the act of 1831. In Gorgas v. Douglas, 6 S. & R. 512, it was held under the act of 1806, that a joint lien against adjoining houses of different owners was bad, but the court expressly declined to pass on the case of houses belonging to the same owner. The latter question came up in the noted case of Pennock v. Hoover, 5 R. 291, which arose before the act of 1831, though not decided in this Court until 1835. It was held that as against one owner the claimant might apportion his claim and have a separate lien against each house, or he might file a joint claim and, in that case, each house would be held for the whole amount. But the effect of the decision went further. There were four blocks of houses, three of three each and one

of four. One Childs had done work on all of them and filed a separate claim against each block. The case arose on distribution of the proceeds of a sheriff's sale, and the auditor apportioned Childs's total claim pro rata on the thirteen houses, but this was held to be error, and each block was directed to bear its own sum total, distributed pro rata within the block.

The next case was Davis v. Farr, 13 Pa. 167, which arose under the acts of 1831 and 1836. Adjoining houses were built by the same contractor under a joint contract with the different owners, and plaintiff, who had furnished materials indiscriminately to the contractor, filed separate claims against the houses, stating in each that he had apportioned his claim pro rata. The lien was held good, and this ruling was followed in Harper v. Keely, 17 Pa. 234.

Chambers v. Yarnall and Young v. Chambers, were argued together, 15 Pa. 265. The owner of a lot having two fronts on parallel streets built a block of eight houses on one front and another of twelve on the other by the same contractor under one contract. In Chambers v. Yarnall, the claimant had furnished materials for all the houses but charged them separately to the two blocks on his books. He first filed a joint apportioned claim against all the houses, and then, fearing that this might not be valid, he filed separate apportioned claims against the separate blocks, each for its own materials. The case came up on one of these separate claims and it was argued that the filing of the first claim against all the houses exhausted the right. But this Court held that the first was a nullity on its face, and sustained the second. Young v. Chambers grew out of the same transaction. The plaintiff furnished materials to both blocks, the charges on his books sometimes specifying the particular block and sometimes being to both jointly. He filed separate apportioned claims and, on the trial of one of them, the charges against that block were admitted but the joint charges were excluded. This Court affirmed the ruling, Chief Justice GIBSON saying: "The word 'building' used in every act on the subject was strictly applicable to a block which, though composed of separate houses, was put up as a whole; but it could not be predicated of separate blocks in different streets, which could in no aspect be viewed as entire." This decision it will be observed not only held that a claim might be filed in the

form now objected to in the case in hand, but that it could not be filed in any other way. In this latter respect it has since been disregarded, as will be noticed hereafter, upon a distinction not observed in it, but it has never been expressly overruled, nor has any case negatived its first proposition, that the lien as filed was valid.

The next case, Taylor v. Montgomery, 20 Pa. 443, is of importance, as from it the present state of the law may be said to start. The lot fronted on two parallel streets, and a block of houses was built on each, adjoining only by their yards,.in the rear. This was the exact situation in Chambers v. Yarnall, supra, and the District Court, on the authority of that case, held a joint claim against both blocks to be bad. But the Supreme Court reversed the judgment and entered judgment for the plaintiff, in an opinion by LOWRIE, J., of only ten lines, taking no notice of the fact that it was overruling Chambers v. Yarnall, which had been cited, and giving no reason for the decision except that the mechanic's lien laws did not define the cases in which a joint lien is proper, and such definition must therefore be found in analogy, of which " the case of joint contracts requiring joint remedies is an obvious one."

The suggestion of a joint contract as the basis of a joint lien seems to have been accepted by the profession, for in the next case, Goepp v. Gartiser, 35 Pa. 130, it was carried out logically by the filing of a joint lien against three blocks of houses belonging to the same owner, though separated by two small public streets. Here, however, the court drew the line and declined to go any further. The court referring to Pennock v. Hoover, and quoting Chief Justice GIBSON in Chambers v. Yarnall, supra, held the lien a nullity and not affected by the case of Taylor v. Montgomery. This rule as to an intervening street is now firmly settled: Schultz v. Asay, 10 W. N. C. 33, 11 W. N. C. 194; Lucas v. Hunter, 153 Pa. 293.

The principle, however, of Taylor v. Montgomery, to the extent of holding that houses may adjoin, in the statutory sense, by their curtilages as well as by their walls, has been accepted and carried out. In Fitzpatrick v. Allen, 80 Pa. 292, the houses were built on parallel streets, running towards each other at the rear but separated there by a private alley; in Kline's Appeal, 93 Pa. 422, the houses were built in blocks of two, with side

yards, but between two of the blocks a space of sixty feet was left for a street which, however, was not dedicated or opened when the work commenced; and in all of these cases a joint apportioned lien was held good. And in Atkinson v. Shoemaker, 151 Pa. 153, there were four rows of houses upon the four fronts of a large lot, but there was an intermediate strip of land left by the owner for a street, and referred to as Rutledge avenue, in the claim filed. It was held that the claim might be amended by adding that the said Rutledge avenue was not dedicated (or opened) at the time the work was commenced, so that that fact on which the validity of the lien might be dependent should be determined by a jury.

And in the last case on the subject in this Court, Phila. Brick Co. v. Johnson, 162 Pa. 199, the same rule was followed, that the court would not determine the case as matter of law on an affidavit of defense but would send it to a jury for the ascertainment of the facts. The precise question that we have now before us was raised in the argument there, but this Court treated it as an open one, and preferred to wait for the final ascertainment of the facts before deciding it, our Brother GREEN, saying: "The affidavit . . . . also raises a question of fact which may be, and probably is, essential to the determination of two legal questions, to wit, one, whether two apportioned liens on parts of one entire block can be filed in any case, and, if so, whether they can be so filed when, as a matter of fact, the land on which the whole number of buildings was erected was a unit and undivided by any street running through it at the time of the contract. In the present state of the record these questions cannot be decided."

It appears from the foregoing review, that the earlier precedents, as shown in Pennock v. Hoover and Chambers v. Yarnall, were in favor of a separate lien for separate blocks of houses, although erected on one lot, belonging to one owner, and under one contract. Chambers v. Yarnall decided not only that the lien might be so filed but that it must. On this point as already noted it was overruled in effect by Taylor v. Montgomery. Since then all the cases before this Court have been contested on the validity of one claim covering all the blocks on an entire lot. Such claims have been sustained, on the principle of Taylor v. Montgomery, to the extent that houses may

adjoin within the meaning of the statute, by their curtilages, even though the latter be separated by a private alley, or even by a space intended for a street but not opened or dedicated at the time the work was commenced, but that the adjoining is severed by an intermediate street. But in none of the cases have Pennock v. Hoover and Chambers v. Yarnall been overruled to the extent of deciding that a separate claim against each separate block is not valid, and in the latest case, as already seen, the question was expressly held to be open.

There being no controlling decision on the subject we next turn to the statutes. The Act of March 30, 1831, P. L. 243, enacts that " whereas it sometimes happens that several houses and other buildings adjoining each other are erected by the same owner, so that it is impossible for the person who has found and provided materials for the same to specify, in his claim filed, the particular house or other building for which the several items of his demand were so found and provided, . . . . therefore it shall and may be lawful in every such case for the person so finding and providing materials," etc., to file with his claim an apportionment of the amount among the said houses, and each of said houses " shall be subject to the payment of its said apportioned share of the debt contracted," etc. This was the first statutory recognition and regulation of apportionment, and it will be noted that it changes the rule of Pennock v. Hoover, that in case of a joint apportioned claim each house shall be charged with the whole. It does not however specify whether the apportionment shall be pro rata absolutely, or in proportion fixed by the claimant. The Act of June 16, 1836, P. L. 699, sec. 13, however, required the claimant to " designate the amount which he claims to be due him on each of said buildings."

There is nothing in these statutes to prevent the material man filing a separate claim against each block or sub-block of houses, if as frequently happens they are so different in size, style, material, or even in location, that he can readily know to which block " the several items of his demand " as the statute expresses it, were furnished. On the contrary, that would seem to be the intent of the act, as indicated in the preamble setting out the impossibility of knowing, etc., as the basis of its remedial enactment. The contrary construction does not seem to

have anything to rest upon but the brief suggestion of Justice
LOWRIE in Taylor v. Montgomery of the analogy of joint con-
tracts requiring joint remedies.   This analogy however has
never been adopted as the basis of decision in any of our cases,
and in Goepp v. Gartiser, 35 Pa. 133, supra, it was distinctly
disregarded where there was an intervening street, although
the houses were the property of one owner, and were all erected
under a joint contract.   Nor is the analogy in itself either close
or controlling.   A joint action on a joint contract is the logical
requirement of a logical system of pleading, but there is noth-
ing logical about mechanics' claims.   The right to have a lien
on one man's land for another man's debt is a purely arbitrary
legislative grant, based on the proposition, not always true in
fact, that the landowner has had the benefit of the contractor's
act.   And the right to apportion the claim is expressly rested by
the statute on the impossibility of the claimant's being able to
know which house his material or labor has gone into.   Cessante
ratione cessat lex.   If there are different blocks of houses on
the same lot, which adjoin even by their curtilages, one appor-
tioned lien may be filed against the whole.   We do not disturb
any of our decisions to this effect.   But by its express terms
the statute is remedial and permissive, and the claimant may,
if he choose, file a separate claim against each house.   A closer
analogy is to be found in the principle that the greater power
includes the less.   The plaintiffs in this case might have filed
one joint apportioned claim against the sixty-five houses, or they
might have filed sixty-five separate claims, one against each
house.   The legislative permission to do the former was based
on the impossibility of distinguishing the individual houses into
which the separate items of material went.   If that impossibil-
ity ceased at the end of a certain row, the reason for a joint
claim ceased, and as the claimants might then have filed sixty-
five separate claims, they violated no statute, nor decision, nor
sound reason, by the lesser act of filing one claim against the
twenty houses on Fortieth street and another against the remain-
ing forty-five on the lot bounded by the four other streets,
including the disputed Sloan street.   By the judicious use of
such subdivision of claims against a large lot, the claimant may
take out of the chances of litigation a class of difficult and vex-
atious questions, such as produced the whole crop of cases from

Chambers v. Yarnall, 15 Pa. 265 to Brick Co. v. Johnson, 162 Pa. 199.

Nor is there any hardship or damage to any one in so doing. Neither parties nor terre-tenants are injured by increase of costs, and the smaller the blocks are, and the more accurately the claims, as filed, correspond with the situation and appearance of the houses on the ground, the easier and the more certainly can the intending purchaser ascertain the beginning of the operation, the finishing of the particular house and the nature, extent and amount of the claims likely to be presented against it. As long ago as Gorgas v. Douglas, 6 S. & R. 512, Chief Justice TILGHMAN expressed the view that the convenience of purchasers was a matter for consideration when the language of the statute was not clear, and that element is at least as important now as it was then.

We hold, therefore, that where there are blocks of buildings so differing in size, style, material, location or time of erection that the materials or labor going into their construction may be readily distinguished and ascertained, the lien claimant may if he chooses file a separate claim against each block, apportioned among its own constituent houses, although all the blocks are erected by the same contractor under one contract, with the same owner.

Judgment reversed and judgment directed to be entered for plaintiffs on the verdict.