## Glen Alden Coal Company Case.

Argued January 30, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN and BARNES, JJ.

*Fred B. Moser,* with him *James C. McCready,* for appellant.

*J. H. Oliver,* with him *P. F. O'Neill, F. B. Gelder* and *W. D. Lewis,* for appellee.

OPINION BY MR. JUSTICE LINN, March 23, 1936:

The subject of the challenged assessment is a tract of land, part of which contains coal and part from which the coal has been exhausted. Before consolidation into a single ownership, there were five tracts as originally warranted. While the appellee owns both coal and surface of most of the tract, of part (48 acres) it owns the coal only. A single or unitary mining operation is conducted on the whole tract.

In 1934, the county commissioners, as a board of revision, passed on the triennial assessment. The coal company appealed to the common pleas, where an assessment of $153,117 was made.[1] The county then appealed to this court. We limit our discussion, as provided by Rule 50, to appellant's statement of questions involved.

The first complaint is that the whole tract was assessed as a unit instead of "in the several warrantee names." As the tract is mined as a unit, this complaint is dismissed for the reasons stated recently in *Lehigh and Wilkes-Barre Coal Company's Assessment,* 298 Pa. 294, 313, 148 A. 301; s. c., 300 Pa. 564, 151 A. 359.

The second and third questions stated may be considered together. "2. Whether the Court erred in refusing to properly classify the said land and to assess the area as 'fee' where the Glen Alden Coal Company was the absolute owner thereof?" "3. Whether the Court erred in refusing to assess the acreage as 'coal only' where the

---

[1] The coal company had also appealed from the assessment of miners' houses, but failed to convince the learned trial judge that the conclusion of the board of revision was wrong; no appeal to this court was taken from the court's conclusion in that respect.

said Glen Alden Coal Company had no ownership in the surface?"

Each side called a number of mining engineers who gave their opinions of the market value of the property together with their qualifications and reasons for their testimony. After the hearing began the engineers on both sides "came to an agreement of the number of tons of coal in place, excluding the barrier pillar." When the evidence of the witnesses is analyzed and tabulated in appropriate classes[2] and is then examined, both comparatively and generally, it becomes obvious that, notwithstanding differences from individual points of view, nothing of substance was omitted which would probably enlighten the court in applying the testimony to the subject-matter under valuation. It was therefore not essential that the learned trial judge should set forth his analysis in greater detail than appears in his opinion filed in the case. After stating, as we think fully, the various acreages, the coal explorations, the area exhausted by mining (78.16 acres), the area (22.53 acres) reserved pursuant to the Act of June 2, 1891, P. L. 176, article III, section 10, 52 PS section 264, for pillar barriers, the existing coal veins, their thickness and pitch, he concluded that he had to deal with the assessment (so far as now questioned) of 472.69 acres. Obviously the exhausted lands and the land containing the pillar barriers were in a different class for valuation purposes from the remaining 372 acres of coal land,[3] and this difference is reflected in his recapitulation, finding the market value to be

|  |  |
|---|---|
| 372.00 acres, @ $800 ................. | $297,600 |
| 22.53 acres (pillar barriers), @ $300 .. | 6,759 |
| 78.16 acres (exhausted), @ $24 ....... | 1,875 |
| Total, 472.69 acres ......................... | $306,234 |

[2] As total acreage, ownership of coal only, ownership of coal and surface, barren land, tons in place.

[3] In 48 acres out of the total 372 acres, the coal company owned the coal and not the surface.

It is agreed of record that the county ratio for assessment purposes is 50% of such value, from which an assessment of $153,117 necessarily followed. We can therefore find no substantial ground for the complaint made by appellant under the second and third questions.

The next point made is that there is no evidence to sustain the valuation of the "reserve pillar coal." The statute, supra, requires owners "of adjoining coal properties to leave, or cause to be left, a pillar of coal in each seam or vein of coal worked by them, along the line of adjoining property, of such width, that taken in connection with the pillar to be left by the adjoining property owner, will be a sufficient barrier for the safety of the employees of either mine. . . ." So long as the necessity stated in the statute exists, this coal cannot be mined, and this fact is necessarily reflected in the market value. The record shows that some of the witnesses, in their valuations considered the coal in the barrier pillars, others did not do so. The contingency rendering that coal presently unminable necessarily reduced the market value of that acreage below the value of like coal that could be mined, as was recognized in *Lehigh and Wilkes-Barre Coal Company's Assessment,* referred to above.

The valuation put on the exhausted land is also questioned by appellant. The acreage was agreed upon, several witnesses gave it a market value of $10 an acre; one gave it from $10 to $20. In the circumstances, we cannot sustain the county's contention that the learned trial judge should have fixed a higher value than $24 an acre.

The order appealed from is affirmed, the costs on appeal to this court to be paid by the appellant.