Susquehanna Collieries Company's Appeal.

Argued December 8, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Frank H. Strouss,* with him *Carleton M. Strouss,* for appellant.

*H. F. Bonno,* County Solicitor, for appellee.

OPINION BY MR. JUSTICE BARNES, March 25, 1940:

The Susquehanna Collieries Company is the owner of anthracite coal lands in Northumberland County, which were duly valued for tax purposes at the triennial assessment of 1936. During the year 1937, as the result of mining operations thereon, 915,815 tons of coal were taken from certain of its tracts lying in Coal Township, Mount Carmel Township, and Kulpmont Borough. The company's request for a reduction of the assessments of these tracts for the year 1937 was refused by the County Board of Revision of Taxes. The company then appealed to the court below, contending that under Section 432 of the General County Assessment Law of May 22, 1933, P. L. 853, the assessments of its properties fixed at the triennium should be reduced by reason of the mining of coal therefrom. Upon the refusal of the court to grant relief this appeal was taken.

From the record it appears that when the triennial assessment of 1936 was made, the company was dissatisfied with the valuations placed upon its properties and, having appealed therefrom, these assessments were finally determined by the court below on October 27, 1937, when a value was given to each tract of land owned by the company in Northumberland County. No appeal was taken from this decision and the assessments therein made became final.

In the opinion upon the 1936 assessments the court discussed the various elements entering into the valuation of the property, and as one of such elements found

as a fact the number of recoverable tons of coal underlying each tract.

This finding has been made by the company the basis of the present litigation, for it now takes the position that since the 1936 assessment placed a definite value upon each ton of coal in place, the assessments of the tracts from which coal was mined in 1937 should be reduced to the extent of the value given to this coal at the 1936 triennial assessment. In this manner effect should be given, so it asserts, to Section 432 of the General County Assessment Law which provides that in inter-triennial years assessments shall be changed where there has been "the mining out of coal, ore, or other minerals assessed under the triennial assessment."[1]

If the formula proposed by the company were to be adopted, then the valuation of coal lands would depend solely upon the value of recoverable coal remaining in place. This contention misconceives the fundamental nature of the assessment of coal lands, which is not the valuation of the coal itself but of the land containing it: *Washington County v. Marquis,* 233 Pa. 552; *Lehigh & Wilkes-Barre Coal Co.'s Assessment,* 298 Pa. 294; *P. & R. C. & I. Co. v. Northumberland Co. Com'rs,* 323 Pa. 185. The sole standard for assessment established by the legislature is market value, which we have repeatedly defined in cases dealing with the taxation of coal lands. See *Lehigh & Wilkes-Barre Coal Co.'s Assess-*

---

[1] The formula used by the company is based upon an exhibit received in evidence, wherein is set forth the value placed upon each tract by the court below, with its separate valuation of the surface lands and improvements. The company assumed that the difference between these two valuations would represent the value of the coal in place. The exhibit further shows the total number of tons of coal in place in each of the tracts as found by the court below. By division, the company computed what it asserts to be the value per ton of such coal. It uses these figures in valuing the tons of coal removed in 1937, and contends that the 1936 assessment should be reduced by the amount so obtained.

*ment,* supra; *P. & R. C. & I. Co. v. Northumberland Co. Com'rs,* supra; *Hudson Coal Co.'s Appeal,* 327 Pa. 247.

Our decisions have plainly stated that the probable quantity of merchantable coal in the ground is *only one factor* to be considered in determining the market value of such lands. Among other elements of equal importance are the quality of the coal, the difficulty of mining it, the demand for the product and the state of the market, the location of the land and the character of its development: *P. & R. C. & I. Co. v. Northumberland Co. Com'rs,* 229 Pa. 460, 467-468; Id. 323 Pa. 185, 189, 191-192; *Lehigh & Wilkes-Barre Coal Co.'s Assessment,* supra, (p. 301).

It is unnecessary for the purposes of this case to review these various elements of value and the weight to be given to them in determining assessments. However, there is no doubt that it would contravene well-established principles to reduce the assessments of the company's properties in exact proportion to the number of tons of coal removed from each tract. According to the company's contention, assessments would be determined by a formula having no relation whatever to market value, whereas market value is the only permissible standard of assessment. We have repeatedly condemned the use of such mathematical shortcuts in the making of assessments. As we said in *D., L. & W. R. R. Co. v. Luzerne Co. Com'rs,* 245 Pa. 515, 518: "The law requires that the valuation of real estate for the purpose of taxation shall be determined upon the basis of market value, or rather actual value, limited and defined by market value. What the law requires cannot be disregarded no matter how desirable some method not authorized might prove to be . . . Scientific formulas, arithmetical deductions and mental contemplations, have small value in making assessments under our practical system of taxation." To the same effect see *Kemble's Estate,* 280 Pa. 441, 445.

The completely fictitious character of the company's method of valuation is shown by the fact that where, as in Northumberland County, the coal veins are irregular and vary greatly in thickness, it is impossible to say with any degree of exactitude, how much coal underlies any particular tract of land. Undue stress is placed upon the finding of the court below, in its opinion concerning the 1936 assessment, as to the tonnage of each tract, since any tonnage figure was at best a rough estimate. Moreover, it appears that this finding was intended to be no more than a mere indication of the weight given by the court to this one factor in determining the market value of these coal lands.

For the above reasons we conclude that the court did not err in refusing to reduce the assessments by the method which the company proposed. However, it does not follow that *no* reduction should be made in the assessments of tracts from which coal was removed.

Under the General County Assessment Law, real estate is assessed for taxation every three years, except in counties of the first class. By this method of triennial assessment the valuation placed on taxable property in the triennial year, must remain unchanged during the two succeeding years, except in those instances[2] where the legislature has specifically provided for alteration: *Central Penna. Lumber Co.'s Appeal*, 232 Pa. 191.

As we have seen, the mining of coal is made one of these exceptions for which a reduction of assessment may be allowed, since it is provided in the Section of the Act before us that "In each of the two years succeeding the triennial assessment . . . the commissioners,

---

[2] Section 432 of the General County Assessment Law requires the assessor to note in the return "such alterations . . . as may have been occasioned by the transfer or division of real estate, or by the destruction of buildings, or by the mining out of coal, ore, or other minerals . . .; and to re-assess all real estate which may have been improved by the erection of buildings or other improvements subsequent to the last preceding triennial assessments."

or board . . . shall send a transcript of such triennial assessment to the elected or appointed assessors . . . enjoining such assessors to make a just return to them and to note in such return such alterations in his . . . district, as may have been occasioned . . . . by the mining out of coal . . ."

Thus it is the mandate of the legislature that where mining is shown to have occurred during inter-triennial years, the assessment of the property from which the coal was taken should be reduced to the extent that its value has thereby been decreased since the last triennial assessment. The fact that the assessors and county commissioners have prepared the triennial assessments in such form that revision thereof in inter-triennial years is difficult or inconvenient, cannot deprive an owner of coal lands of his statutory right to have the assessment of his property so reduced.

The removal of coal may not, in every case, diminish the value of the land, but this is the exception rather than the rule, and the legislature has recognized that some diminution in value would ordinarily result. In the instant case, the assessors and the board apparently disregarded the mining from the company's property,—although we are informed that notice of this fact was given to them—taking the arbitrary position that no change in assessments would be made in inter-triennial years. This was a plain violation of the statute.

The act imposes the duty upon the assessors of making inter-triennial reductions in assessments where the interim mining of coal has affected the market value of lands in their districts (Sections 431, 432), and requires them "to give notice to the taxable inhabitants in like manner as after the triennial assessment" in those cases where a change is authorized (Section 510). Presumably, although it has not expressly so provided, the legislature intended that a taxpayer should bring such alterations in value to the attention of the assessor. Otherwise, an extremely heavy burden would be placed

upon the tax officials to discover the existence and extent of mining throughout their districts.

But, assuming that the assessor has been informed of mining, and has arbitrarily refused to change the assessment, or has allowed an inadequate reduction, the statute then provides that the county board of revision shall entertain appeals in such inter-triennial years, to grant any abatement that shall appear just and reasonable, (Section 511).

Where, as here, the board has refused to alter the existing assessment, or where it has done so erroneously, the taxpayer may appeal to the court of common pleas from that action. Thus, in those exceptional situations in which assessments may be changed in inter-triennial years, the procedure for assessment and review is precisely the same as that established for the triennial assessment.

At the hearing before the court, the introduction in evidence of the assessment and the records of the taxing authorities pertaining thereto, will then, as in the review of triennial assessments, establish *prima facie* the taxable value of the property. Thereupon the burden is cast upon the taxpayer to show error in the assessment. He must present evidence that coal has been removed from his lands during the year to bring his case within the provisions of the act authorizing abatement. And his proofs must go further, because the mere fact that there has been, presumptively, a diminution in the market value of the property is not sufficient to enable the court properly to revise the assessment.

The taxpayer must produce evidence, not merely of the quantity and value of the coal mined out, *but of the effect of this operation upon the market value of the tract involved.* This will require consideration of whether the coal within that tract has been wholly or partially exhausted, or whether the value of the land has been enhanced by making the coal still in place more accessible. Obviously, it is the taxpayer who must offer this

evidence, because he is attacking the correctness of the assessment, and because, as a practical matter, he is in the best position to prove the facts.

Applying these principles to the case before us, we are of opinion that the company has failed to carry its burden of proof, in that it presented evidence of only one of the factors upon which the valuation should be based. And in overlooking the other elements of value it provided no proper ground for revision of the assessments.

However, under all the circumstances of the present case, we have reached the conclusion that the company should not be deprived of the opportunity to present proper evidence of the effect upon land values of the mining in 1937 to sustain its claim for reduction. We will, therefore, remand the case for further proceedings in accordance with the views here expressed.

For the reasons above given the decree of the court below is reversed, and the record is remanded with instructions to hear the appeal and make such revision of the assessments as justice requires; costs to be paid by appellant.