Comly *v.* Philadelphia, Appellant.
Fry *v.* Philadelphia, Appellant.
Lauer et ux. *v.* Philadelphia, Appellant.

Argued October 1, 1943. Before KELLER, P. J., BALD-RIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ. (RENO, J., absent).

*Howard E. Stern,* with him *O. Charles Brodersen,* Assistant City Solicitors, and *Robert McCay Green,* City Solicitor, for appellant.

*J. Willison Smith, Jr.,* for appellees.

OPINION BY KELLER, P. J., December 9, 1943:

Two questions are raised in appeal No. 160.

(1) Whether in an eminent domain proceeding, growing out of the taking of land by the City of Philadelphia for an airport, a property owner whose 178 lots—all being subdivisions of one tract or plan of lots—were separately valued by the Board of View in their report, must take 178 appeals to the court of common pleas,

or may take one appeal from the *report* of viewers, and on the trial of the appeal have the jury render one verdict determining all the damages sustained by him? A similar question arises in appeals Nos. 159 and 161.

(2) Whether, if only one appeal was taken by the property owner, and the City appealed from an order of the court below, discharging its rule to restrict the appeal to an award of damages for one lot, the City's appeal should be taken to this court or to the Supreme Court, where the total of the damages awarded the property owner in the report was in excess of $9000, although no single award of damages exceeded $130?

By ordinance approved March 6, 1942 the City of Philadelphia appropriated 523 acres of ground for the purposes of an airport. This was done pursuant to the Act of May 12, 1925, P. L. 614, 53 PS §3800-1, 2, which provides that the proceedings for the condemnation of lands thereunder shall be conducted in the manner provided by the Act of March 26, 1903, P. L. 63, as amended by the Act of March 14, 1907, P. L. 12; the title to be thus acquired to be in fee simple.

The practice prescribed by the Act of 1903, supra, is set forth in sections 4 and 5 of that act.

Section 4 provides for a hearing by the viewers, who shall thereafter *"estimate and determine the value of the lands taken and appropriated,* and any damages that may have been sustained by reason of said taking and appropriation, and *to whom the same is payable;* and, having so estimated and determined the value of the property and damages sustained, they shall make up their report, which shall be ...... filed in the court of common pleas from which the order to view issued ......"

Section 5 provides, inter alia: "...... within said thirty days from the filing of any such report in court, the respective city, or any party whose *lands* have been taken, may appeal to the proper court of common pleas,

and demand a trial by jury, according to the course of the common law ...... *Upon the entry of final judgment* on any issue had upon such appeal, either party shall have the right to an appeal to the Superior or Supreme Court, as in other cases." (Italics supplied)

Of the 523 acres of land so appropriated a tract of forty-one acres and twenty-eight perches had been conveyed to Daniel R. Comly by a deed dated September 20, 1905. On January 27, 1908 Daniel R. Comly placed on record a plan dividing this tract into 393 numbered lots, bounded by proposed streets, the whole being designated as 'Ashton Summit'. Every lot had a frontage of 25 feet and was 121 or 122 feet in depth. He conveyed five of these lots, described by numbers,—none of them adjoining—to George W. Fry; four adjoining lots, also described by numbers, were conveyed to Christopher Lauer and Wilhelmina Lauer, his wife; one hundred and seventy-eight lots, some adjoining, others not, vested in the children of Daniel R. Comly and his wife, to wit, John Comly, William B. Comly, Esther E. Comly and Daniel Paul Comly, jointly, as the residuary devisees of their deceased parents.

The parties not being able to agree upon the damages to be paid for such taking, the City filed its petition in Court of Common Pleas No. 4 praying for the appointment of a Board of View to assess the damages caused by said appropriation.

The Board of View heard the parties interested and their witnesses and *estimated and determined the value of the lands so taken and appropriated, and to whom the same was payable,* and on January 19, 1943, made and filed their report to the court, in which, inter alia, they found that damages had been sustained by these appellees, by reason of such taking and appropriation, and assessed damages against the City as follows:

To George W. Fry for Lot No. 13, $49.40; for lots 71 and 335, $31.20 each; for lots 108 and 349, $46.80 each.

To Christopher Lauer [and Wilhelmina, his wife] for lots 194 and 195, $57.20 each; for lots 196 and 197, $31.20 each.

To John Comly, William B. Comly, Esther E. Comly and Daniel Paul Comly—178 lots—damages were awarded for each lot, by its respective number in the plan of lots, in amounts ranging from $31.20 to $130 (aggregating $9048).

Within thirty days, separate appeals were taken from said report to the court of common pleas by, (1) George W. Fry (No. 159), (2) John Comly, William B. Comly, Esther E. Comly and Daniel Paul Comly (No. 160), and (3) Christopher Lauer and wife (No. 161).

On February 23, 1943, more than thirty days after the filing of said report, the City of Philadelphia filed its petition asking for a rule upon each appellant to restrict his or their respective appeal from the Board of View to a single award; which after answer filed and argument the court discharged. The City took separate appeals to this court from the discharge of each of its rules, but prepared and filed but one brief and record. In his opinion filed pursuant to our Rule No. 58, the learned President Judge of Common Pleas Court No. 4 drew attention to the fact that the amount involved in the Comly appeal—No. 160—was more than $9,000, an amount in excess of the jurisdiction of this court; whereupon the appellees in that appeal moved to certify the appeal to the Supreme Court. The jurisdiction of the court will depend on whether one appeal or 178 appeals should have been taken by the Comly heirs and devisees.

In order to decide this question, which is the second question involved in the Comly appeal, we shall have to consider preliminarily the first question involved; for if the Comly appellants should have taken an appeal from each separate lot valuation, the second question does not arise. On the other hand, if the Comly

heirs were right in taking one appeal from the report, covering the aggregate of all the lot valuations, then the City's appeal should have been to the Supreme Court, for the amount involved was more than $2,500; and as identically the same questions were raised by the City's appeal in the *Fry and Lauer* cases, under the Act of June 11, 1935, P. L. 301, No. 135, those appeals may likewise be certified by us to the Supreme Court.

Passing by the question whether an appeal lies from such an interlocutory order, (See Section 5 of Act of 1903, supra) counsel for the City starts off on the wrong premise in stating that "the right of appeal given [the property owner whose land is taken by eminent domain proceedings] by the Constitution [Article XVI, section 8] is to be 'according to the course of the common law' ". When an appeal is taken to the court of common pleas from an assessment of damages in eminent domain proceedings the amount of the damages is to be "determined by a jury according to the course of the common law",—that is, the *trial of the appeal* is to be by a jury according to the course of the common law; not that the *appeal* is to be *taken* according to the course of the common law, for there was no appeal from a common law civil action—only a *writ of error.* An *appeal* was the method for reviewing a decree in equity. Hence the wealth of authority contained in the City's brief sustaining the principle that a defendant must now, under our present practice, take a separate appeal from every separate or several *judgment* has no application here, for the valuation given each separate lot taken, as a finding of damages, is not a *judgment* within that rule. The clause in the report assessing damages against the City covers all the lots taken from each property owner, and the right of appeal, given by the statute to "any party whose *lands* have been taken", is from the *report.*

Of course, the Comlys and the Lauers and Fry could

not take one appeal from the report. Nor have they done so. Hence cases holding that different property owners may not join in a single appeal from awards given by a board of view, have no application here. Nor do cases arising under statutes directing that rights of action by husband and wife, or parents and child, growing out of the same tortious act, shall be redressed by a single action of trespass (Acts of May 8, 1895, P. L. 54; May 12, 1897, P. L. 62) have any application, for those statutes provide that in case of recovery by the plaintiffs separate verdicts shall be rendered and separate judgments entered thereon, and hence separate appeals must be taken by the losing defendant.

So too, one appeal cannot be taken, by either the claimants, or those opposing them, from a decree of distribution in the common pleas or orphans' court, which embraces awards to different distributees, for each separate and several *distributee* stands on his own feet, and the decree, as to him, is separate and several.[1] But a claimant may present to the orphans' court several items of claim and take one appeal from a decree disallowing them all. An accountant may take one appeal from a decree embracing a number of surcharges: *Locher's Est.*, 219 Pa. 46, 67 A. 954; *Crawford's Est.*, 340 Pa. 187, 16 A. 2d 521. So likewise, a plaintiff in an action of assumpsit may join several distinct rights of action, e. g., notes, book account, claim for rent, etc., or in an action of trespass may include claims for personal injury and property damage, and, in either case, in the event of an adverse judgment, may take one appeal. In appeals from assessments of taxes one appeal to the court of common pleas may be taken from assessments of different tracts, provided they are in the same taxing district. See the *Coal Assessment* cases, such as *Glen Alden Coal Co. v. Commrs.* 345 Pa. 159, 162-163,

---

[1] *White's Appeal*, 15 W. N. C. 313; *Schuetz's Est.*, 315 Pa. 105, 172 A. 865; *McGlinn's Est.*, 270 Pa. 373, 113 A. 548.

27 A. 2d 239; *Susquehanna Collieries Co. Appeal,* 338 Pa. 366, 367, 12 A. 2d 99; *Lehigh Navigation Coal Co.'s Appeal,* 327 Pa. 327-328-333, 193 A. 50; *P. & R. C. & I. Co. v. Northumberland Co. Commrs.,* 323 Pa. 185, 196, 198, 199, 201, 203, 204, 206, 207, 186 A. 105.

Other statutes dealing with eminent domain proceedings, viz., the Act of June 23, 1931, P. L. 932, relating to cities of the third class, section 2842, as amended by Act of April 19, 1939, P. L. 28, as well as sections 2840-2841; Act of June 24, 1931, P. L. 1206, concerning townships of the first class, section 1945, and sections 1943-1944; and Act of May 1, 1933, P. L. 103, concerning townships of the second class, section 1045, and sections 1043-1044, show that the appeal is taken from the *report;* and they also exhibit a legislative intent to simplify the proceedings rather than encumber them with useless appeals and expenses, by providing that several appellants may unite in an appeal to the Supreme or Superior Court where the grounds of appeal are similar.

There is no statutory authority, and no reasonable ground of intendment or inference, requiring the Comly heirs to take 178 appeals from the report of the board of view, simply because the board estimated and determined a certain value for each separate lot. One jury in the court of common pleas is just as competent to hear and decide the whole matter as the board of view was. In fact, appellant conceded on the argument that if 178 appeals had been taken they would have been consolidated and heard as one appeal in the jury trial in the common pleas, in order to avoid unnecessary cost and delay. See Rules of Civil Procedure No. 213(a).

We may add, while not necessary to the solution of the case, that a decision for the City in this appeal would be a most disastrous Pyrrhic victory; for while in this particular matter, it might lessen the damages payable by the City, in the long run it would so in-

crease the costs payable by it in the taking and appropriation of lands, etc., as to make the amount saved on this appeal an inconsiderable item. It would be a case of "To spare at the spigot and let run out at the bunghole".

Fortunately for the City, we do not arrive at that conclusion. We answer the first question involved, by holding that each landowner was not obliged to take a separate appeal to the court of common pleas from the amount determined to be his damages for each separate lot, but could take one appeal from the report of the board of view and have all his damages adjudicated on the trial of that appeal.

We answer the second question, by holding that the appeal taken by the City from the order of the court below refusing to restrict the appeal of the Comly heirs from the report of the board of view to a single award for one lot, should have been taken to the Supreme Court, as the amount involved was in excess of $9,000, and we therefore certify the Comly Appeal, No. 160, to the Supreme Court, at the costs of the City of Philadelphia.

And pursuant to the Act of June 11, 1935, P. L. 301, No. 135, as identically the same questions are involved in appeals Nos. 159 and 161, we also certify those appeals to the Supreme Court, at the costs of the City.

It is so ordered.