## Mathies Coal Company Appeal.

130

Argued March 21, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, ROBERTS and POMEROY, JJ.

reargument refused August 15, 1969.

*Harold R. Schmidt,* with him *Thomas E. Boettger, Ralph W. Peacock,* and *Rose, Schmidt & Dixon,* and *Peacock, Keller & Yohe,* for appellants.

*Thomas J. Terputac* and *George B. Stegenga,* with them *William C. Porter,* Assistant County Solicitor, for appellees.

OPINION BY MR. JUSTICE EAGEN, June 27, 1969:

In controversy in these appeals are 19 real property tax assessments involving coal owned by appellants, Consolidation Coal Company and Mathies Coal Company. The issues raised in the 19 original appeals to the court below from the decision of the Board for Assessment and Revision of Taxes were common as to law and fact and were, accordingly, consolidated for hearing.

"The Bituminous Mine Subsidence and Land Conservation Act of 1966", Act of April 27, 1966, P. L. 1, 52 P.S. §1406.1 et seq., provides in Section 1406.4 that in order to guard the health, safety and general welfare of the public, no owner, operator, lessor, lessee or general manager, superintendent or other person shall mine bituminous coal so as to cause damage as a result of the caving in, collapse or subsidence of the following surface structures in place on the effective date of the Act: public buildings, dwellings and cemeteries.

Prior to the effective date of this Act, coal owners had the right to mine, if they so chose, all coal without legal liability for damage caused to any surface structures. While the Act merely prohibits mining in any manner which will cause subsidence, appellants claim that as a practical matter the Act requires that the coal be left in place.

Following the passage of the above Act, the appellants requested the Washington County Assessor to reduce the assessed value of their minable coal by the amount of the value of the coal required for support under the Act. Upon refusal of the request, timely

appeals were taken to the Board for the Assessment and Revision of Taxes which, after hearing, denied the appeals. From the order of the Board denying the appeals, appeals were taken to the Court of Common Pleas.

At the hearing, the Board offered in evidence the records of the 19 tax assessments and rested. The coal companies offered in evidence, inter alia, the following: (1) Testimony of their chief engineer that there is no feasible way to support a surface structure other than to leave in place 40% to 45% of the coal within a specified area of the coal beneath each structure; (2) A calculation of the number of acres of support coal necessary to be left to support structures which on April 27, 1966, existed on the surface above the coal companies' coal which was allocable to each municipality in Washington County; and (3) Testimony of a mining engineer that coal left for support of surface structures has no actual or market value, either directly or indirectly, to either of the appellant coal companies. Significantly, no evidence of value whatsoever was offered by appellants to controvert the complete, total assessment valuations as fixed by the Board in each of the 19 assessments.

The hearing judge in an opinion dismissing the appeals ruled that the effect of the testimony that the support coal had no actual or market value at all was tantamount to seeking its complete removal from assessment which in turn would result in an exemption from taxation which neither the Constitution nor any statute permits or authorizes. Exceptions to the opinion and order of the trial judge were dismissed by the court en banc.

It is the contention of the appellants that compliance with the Subsidence Act requires them to leave in place sufficient coal for the support of those sur-

face structures enumerated in Section 1406.4, and has therefore reduced the market value of their minable coal by the value of the support coal. As a corollary thereto, the appellants argue that, inasmuch as the uncontradicted, credible testimony of their expert on coal valuation is that such support coal has no actual or market value to them, the total assessment in each case as it now stands is improper and invalid. Appellants deny they are seeking an "exemption" from taxation of the support coal. In fact, they concede that it is assessable at its market value but hasten to add that its market value is zero.

In the disposition of this appeal and for the purposes of this opinion only, we shall accept as correct the uncontroverted testimony of appellants that in the present state of mining and engineering knowledge the only way to support the surface structures as required by the Subsidence Act is to leave in place 40% to 45% of the coal in a pillar of varying thickness underlying the location of the structure.

Coal is real estate and where the coal estate has been severed from the ownership of the surface by agreement or conveyance, the coal is separately assessable and taxable to the owner of the coal estate. *Sanderson v. Scranton,* 105 Pa. 469 (1884). The owner of coal in place has been held taxable even though he has no right to mine or remove the coal.

In *Raub v. Lackawanna County,* 60 Pa. Superior Ct. 462 (1915), a deed from a coal company conveying the surface of a lot of land contained the following restriction: "Excepting and reserving, however, unto the said company, their successors and assigns, all coal and minerals beneath the surface of and belonging to said lot and also reserving to said company, its successors and assigns, the sole right and privilege to make, construct and use any subterranean passage or

gangway under said lot that may be required by said company, its successors and assigns, to reach and mine any coal or other minerals belonging or appertaining to other lands or premises, *but without the right to said company to mine and remove any coal or other minerals under said lot,* except for the purpose of making and using said subterranean passage or gangway, but not thereby opening any mine or airshaft or establishing any fixture upon the surface of said lot." (Emphasis ours.) In holding that the coal in place under the lot was a proper subject for taxation to the grantor, the court noted that the effect of the words "without the right to said company to mine and remove any coal or other minerals under said lot" did not destroy the quantity of the estate in the coal therein excepted and reserved.

In *Union Trust Co. of Pittsburgh v. Bellman,* 300 Pa. 234, 150 A. 632 (1930), it was held that a restriction as to mining which was inserted in a coal lease so that the excepted coal might not be removed in a manner which would interfere with the operations of the surface owner no more destroyed the title of the owner of the coal rights than title to land would be defeated by a building restriction thereon. In *Glen Alden Coal Company Case,* 321 Pa. 333, 184 A. 123 (1936), pillar barriers of coal required by a statute to be left in place thus rendering the coal presently unminable was held to *reduce* the market value of that acreage for assessment purposes below the value of like coal that was minable.

*Thompson's Appeal,* 271 Pa. 225, 114 A. 774 (1921), does not hold, as is contended by the appellants, that the value of the support coal *must* be deleted from the coal owner's assessment. In that case, the assessor himself, in his determination of the marketable tonnage, of his own accord, subtracted therefrom the ton-

nage required for surface support. There was no dispute or issue between the parties as to the method used by the assessing authorities in the determination of the marketable tonnage. The issue or dispute between the parties in that case involved only the value per ton of the marketable coal, the amount of which marketable coal was not in issue. *Rockwell v. Warren County*, 228 Pa. 430, 77 A. 665 (1910), also cited by appellants, merely observed that the mere fact of an express grant of oil and gas rights underlying the surface is not an assurance that in point of fact there is any oil or gas in existence and if there is none, there is, of course, no estate to tax.

We have no difficulty in concluding that the coal required to be left in place, unmined, to support surface structures under the Subsidence Act is a part of the coal lands owned by the coal companies and that as such component part it is a proper item to be considered in fixing the total assessment valuation of the coal lands. At most, the property right affected by the Subsidence Statute is not ownership but the use of the thing owned. The Act does not destroy the ownership of the coal; instead it merely places a limitation on the right of removal so as to prevent cave-ins which might result in injury or damage not only to the surface but also to the employees and mine properties of the owners themselves. Such a limitation or restriction of use of property is not fundamentally different from the myriad of other statutory restrictions imposed on the use of property for the protection of the health, safety and general welfare.

We are, therefore, inclined to agree with the appellants that the essential problem involved in this case is not one of tax-exemption but of tax-assessment valuation. However, even in this aspect of the case, the appellants, in seeking a determination of the value of

the support coal only, appear to have misconceived the fundamental nature of the issue involved in an appeal from a tax-assessment, to wit, the reasonableness and correctness of the assessment as a whole and not the correctness of a valuation placed upon one of the constituent elements or factors entering into the value of the subject of taxation. "When an appeal is taken from the decision of the board of revision and appealed to the Court of Common Pleas, the question before the latter tribunal is not whether the value placed upon certain constituent elements properly entering into the value of the subject of taxation is just and equitable, but whether the assessment of the subject as a whole is just and equitable." *Pittsburgh Terminal Coal Co. Appeals,* 83 Pa. Superior Ct. 535 (1924). We have consistently adhered to this rule and have more recently held that even the failure to attack the complete assessment, whether because of a stipulation or otherwise, does not limit the authority and obligation of the hearing judge to determine the correctness of the assessment as a whole. *North Park Village, Inc. v. Bd. of Property Assessments,* 408 Pa. 433, 184 A. 2d 253 (1962); *Deitch Company v. Bd. of Property Assessment,* 417 Pa. 213, 209 A. 2d 397 (1965); and *Pittsburgh Miracle Mile Town & Country Shopping Center v. Bd. of Property Assessment,* 417 Pa. 243, 209 A. 2d 394 (1965).

The presentation of the assessment records by the Board in this case made out a prima facie case which established the validity of the assessments which must be affirmed in the absence of sufficient proof produced by the coal companies to overcome the correctness of the valuations so fixed by the Board. *North Park Village, Inc. v. Bd. of Property Assessments* (supra); *Deitch Company v. Bd. of Property Assessment* (supra). However, the only evidence as to valuation pro-

duced by the coal companies was directed solely to the value of the coal acreage required for surface support which, of course, was only *one* of the many constituent elements entering into the value of the subject of taxation as a whole, which subject was the whole of the respective mine tracts involved in each assessment. The appellants produced no evidence whatsoever as to the market value or any other valuation of the coal estate as an entire entity.

The rule that it is the reasonableness of the total assessment that controls is, of course, applicable to a coal mining operation. In the assessment of a coal mining operation, the mine as an entity is to be valued and if the total value as fixed by the Board is not incorrect, the taxpayer is not harmed by a failure to assign a proper value to one of the factors affecting its value. *Lehigh Navigation Coal Company's Appeal,* 327 Pa. 327, 193 A. 50 (1937). In *Susquehanna Collieries Company's Appeal,* 338 Pa. 366, 12 A. 2d 99 (1940), Section 432 of the General County Assessment Law (now §511 thereof, 72 P.S. 5020-511) provided that in inter-triennial years assessment changes should be made where coal or other minerals assessed under the triennial assessment have been mined out. The owner of coal lands sought a reduction of its assessment as fixed at the last triennial assessment by reason of the mining of coal therefrom in the interim, *to the extent of the value of the coal so mined* which is the very formula which appellants here seek to have applied. We there held that the assessing authority had properly refused to so reduce the assessment since the probable quantity of merchantable coal in the ground is only one of many factors to be considered in determining the market value of coal lands, other factors being the quality of the coal, the difficulty of mining it, the state of the market, location of land and character of its

development. We observed that the formula proposed by the coal company misconceived the fundamental nature of the assessment of coal lands which is not the valuation of the coal itself but rather of the land containing it and that the removal of coal may not in every case diminish the value of the coal lands but may even enhance the value thereof by making the coal still in place more accessible. We then ruled that the taxpayer, in order to overcome the prima facie correctness of the assessment, was bound to produce evidence not merely of the quantity and value of the coal removed, but also of the effect of the removal upon the market value of the tract involved.

And so in the instant case even if we accept as credible the appellants' testimony that the support coal had no value whatsoever, it was their further burden, in order to overcome the prima facie correctness of the assessment, to produce independent evidence that the market value of the subject of the assessment as a whole was lower than the total assessment as fixed by the Board. This, they did not even attempt to do. There was, therefore, insufficient evidence before the court below to support a finding that the total assessment was incorrect. The lower court under the state of the record had no alternative other than to allow the assessment of the Board to stand and dismiss the appeals.

Moreover, in our opinion, the lower court was justified in refusing to accept as credible the appellants' testimony that the support coal had no value at all.[1]

---

[1] The lower court actually found that the effect of the testimony that the support coal had no value at all would compel its complete removal from assessment; the court, therefore, concluded that an owner of real estate could not be heard to so say. We construe this to mean that the court found the appellants' testimony of "no value" incredible.

The support coal, being unminable, may have no present value as marketable or merchantable coal. But it has a present value to the appellants for the precise purpose for which it is being and will be used, viz., to prevent cave-ins of the surface from occurring in the coal companies' mining operation. The value of the support coal lies, for instance, in the safety it lends to the mining operation; in the keeping open and free from obstruction the subterranean passageways of the mine which provide access to other coal lying outside and beyond the scope of the structures to be supported; in minimizing the appellants' risk of loss from interruptions of their mining operations resulting from cave-ins, and in minimizing the appellants' cost and expense of clearing away the effects of cave-ins.

We, therefore, hold that the support coal was an item or element of value proper to be considered by the Board of Assessment and Revision of Taxes in fixing the total assessment. By virtue of the presumption of correctness accorded to the Board's assessment, we must presume that whatever value the support coal has as part of the whole mining operation as a unit has been properly reflected in the total assessment. At best, the appellants have adduced evidence of value tending to impeach or controvert one item or constituent part of the total assessment, but have voluntarily elected not to introduce any evidence of value to controvert the total assessment as such.

While we have not employed the same rationale as the lower court in arriving at our decision, the result reached by both is essentially the same. We will, therefore, affirm the order of the court below dismissing the assessment appeals.

Order affirmed.

Mr. Justice O'BRIEN took no part in the consideration or decision of this case.

140

While I am satisfied with the result on the merits reached by the majority, I cannot permit that satisfaction to emasculate our rules of jurisdiction. *DuBois's Appeal,* 293 Pa. 186, 142 Atl. 134 (1928), upon which appellant relies to consolidate separate claims to reach our jurisdictional amount, and which the majority sub silentio accepts, has no application to the situation with which we are presently confronted. In *DuBois's Appeal* a consolidation of different claims was permitted where the coal acreage was located in contiguous tracts within the same township and owned by one taxpayer. The tracts here are not contiguous, not in one township, and not owned by one taxpayer. Since no individual claim reaches our jurisdictional limit, I would quash this appeal and remit to the Superior Court.