City of Wilkes-Barre Industrial Development Authority and the Wilkes-Barre Inn, a Limited Partnership, Appellants *v.* Board of Tax Assessment Appeals of the County of Luzerne, Appellee.

Argued December 12, 1984, before Judges ROGERS, CRAIG and DOYLE, sitting as a panel of three.

*John G. Whelley, Jr.,* with him, *Edward A. Monsky, Rosenn, Jenkins & Greenwald,* for appellants.

*James V. Senape, Jr.,* with him, *Sol Lubin,* for appellee.

Opinion by Judge Doyle, May 8, 1985:

This is a tax assessment case in which Appellants, City of Wilkes-Barre Industrial Development Authority and the Wilkes-Barre Inn, appeal from the order of the Luzerne County Court of Common Pleas which found the fair market value of Appellant's property to be $4,758,380.00 for the 1982 tax year.

Appellants are the owners of the Sheraton-Crossgates Hotel located in downtown Wilkes-Barre, Pennsylvania. On December 22, 1981, Appellants appealed to the Luzerne County Board of Assessment Appeals (Board) from a 1982 tax assessment against their property in the amount of $970,340.00. On October 21, 1982, the Board affirmed this assessment, and an appeal was taken to the court of common pleas. A trial de novo was held on March 24, 1983, during which both the Appellants and the Board presented testimony on the issue of the property's fair market value. Although the witnesses of both parties used the capitalization of income, or income analysis approach[1] to reach their conclusion, the Appellants' witness arrived at a fair market value of $2,315,291.00 while the Board's witness arrived at a value of $4,-758,380.00. Both parties agree that the ratio of assessed value to fair market value in Luzerne County was 21 percent.

---

[1] The income analysis approach calculates the value of income-producing property by capitalizing the property's annual net income. Net income, the principal component in the calculation, is derived by deducting the property's actual annual expenses from the year's gross income. *Appeal of Chartiers Valley School District,* 67 Pa. Commonwealth Ct. 121, 127 n. 9, 447 A.2d 317, 320 n. 9 (1982), *appeal dismissed,* 500 Pa. 341, 456 A.2d 986 (1983).

The trial court found that the weight of the testimony favored the Board's evaluation of fair market value and, on July 12, 1983, dismissed Appellants' appeal.

On appeal to this Court, Appellants argue that the Board failed to present competent, relevant evidence on the issue of fair market value, and that therefore the court was required to accept Appellants' evidence on this issue in reaching its decision.

Our scope of review in a tax assessment appeal is limited; the findings of the Court below must be given great force and will not be disturbed unless clear error appears or there is an abuse of discretion or lack of supporting evidence. *Appeal of Chartiers Valley School District,* 67 Pa. Commonwealth Ct. 121, 447 A.2d 317 (1982), *appeal dismissed,* 500 Pa. 340, 456 A.2d 986 (1983).

The order of proof in a tax assessment case is well established. Once the assessment record has been admitted into evidence, a prima facie case for the validity of the assessment has been established, and the taxpayer has the burden of coming forward with competent, relevant evidence to rebut the validity of the assessment. Once the taxpayer has met this burden, however, the taxing authority may no longer rely on the assessment record, and must come forward with evidence of its own to rebut the taxpayer's evidence. *Dietch Co. v. Board of Property Assessment,* 417 Pa. 213, 221-22, 209 A.2d 397, 402 (1965). "Where the taxpayer's testimony is relevant, credible and unrebutted, it must be given due weight and cannot be ignored by the court. It must necessarily be accepted." *Id.* at 222, 209 A.2d at 402; *McKnight Shopping Center, Inc. v. Board of Property Assessment,* 417 Pa. 234, 242, 209 A.2d 389, 393 (1965).

Appellants contend that the Board's testimony on the issue of fair market value did not succeed in its rebuttal because it was neither competent nor credible. Appellants point to various errors allegedly made by the Board's witness, Joseph Anzalone, in calculating fair market value by use of the income analysis approach. Appellants first contend that it was improper for Anzalone to value the first floor of the hotel building by applying a square-foot rental figure to the floor's total area. Appellants note that the present use of the first floor for such services as lobby, restaurant, banquet rooms, kitchen and swimming pool, is necessary to the hotel's operation, and that any valuation of this space has already been reflected in the hotel's income—either by the additional income derived from these services (*e.g.* banquet rooms), or by the higher room rates which can be charged because of their presence. Appellants thus argue that adding the first floor's potential rental amount to the amount actually derived from hotel rooms results in duplicative valuation. While we understand the difficulties attendant to the Board's method, we cannot conclude that the method was so defective as to render the evidence incompetent and unworthy of belief. The Board's witness chose to value the first floor by potential rentals. This decision was consistent with his use of an estimated income figure for the total property, as contrasted to an *actual* income figure which was used by the Appellants' expert. Whether this decision was preferable to the Appellants' method of valuing the first floor by actual income is a matter of credibility which is left to the fact finder to resolve.[2]  *Mellon Bank,*

---

[2] The fact finder may have believed, for example, that the duplication of valuation inherent in the Board's method was offset by the witness' use of an artificially low square-foot rental figure.

*N.A. Appeal,* 78 Pa. Commonwealth Ct. 463, 467 A.2d 1201 (1983). So long as the estimate was not duplicated in fact by using potential income for the lobby area services and actual income for the remainder of the hotel, we can find no inherent error in the Board's analysis.

Appellants raise additional arguments attacking the manner in which the Board's witness calculated the property's income. Appellants claim that the Board's witness, a) used estimated, rather than actual income figures, b) improperly considered taxes as part of the income, and, c) failed to separate income attributable to the hotel's real estate from that attributable to the hotel's services. A review of the testimony suggests that, as was the case in the valuation of first floor rentals, these items were questions of credibility to be resolved by the fact finder. Appellants' argument is essentially that the calculations of the Board's witness were inferior to those of Appellants' own witnesses. Our scope of review, however, is limited to considering whether there is supporting evidence for the trial court's determination. Since the Board's evidence is not clearly incompetent or incredible, it constitutes supporting evidence which the court could properly use in reaching its decision.

Appellants also argue that the trial court erred in admitting, and in relying upon, certain irrelevant testimony to corroborate and give credence to the Board's determination of fair market value.

Initially in this regard, Appellants claim that the court improperly considered reconstruction costs as corroborative of the Board's fair market figure. From financial documents, the Board's witness determined that the cost of the hotel's initial construction in 1980 was $6,759,000.00. This cost of construction was then used as a "check" upon the reasonable-

ness of the fair market value derived by use of the income analysis approach. It is well settled that reproduction costs have no probative value for any purpose in fixing the fair market value of improved real estate for tax purposes. *United States Steel Corp. v. Board of Assessment and Revision of Taxes*, 422 Pa. 463, 223 A.2d 92 (1966); *Buhl Foundation v. Board of Property Assessment, Appeals and Review*, 407 Pa. 567, 180 A.2d 900 (1962).

We have held that:

The "reproduction costs approach" is not a recognized method of establishing market value in tax assessment cases. The results produced by applying this technique cannot be relied upon by the court, *even for the limited purposes of verifying estimates derived through the utilization of other methods*. . . . (Emphasis in original.)

*Appeal of Chartiers Valley School District*, 67 Pa. Commonwealth Ct. at 127 n. 11, 447 A.2d at 320 n. 11.

In relying upon the Board's evidence in the present case, however, the trial court distinguishes this case law, determining that what was being considered here was not reproduction cost, but actual construction cost. We do not find any significance in this distinction. Under the reproduction cost approach the upper limits of an improved property's value are related to the cost of reconstructing, or reproducing, the improvement, minus depreciation. *Id.*, 477 A.2d at 320 n. 11. As a practical matter, in the case of a recently constructed building such as we have here, reproduction cost would differ very little from the actual cost of construction. More importantly, however, is that the use of either figure—whether cost of construction or cost of reconstruction—is an attempt to relate the fair market value of the property

with the cost of building the improvement upon it. It is this type of approach that the Pennsylvania Supreme Court described as having no probative value for tax assessment purposes in *U.S. Steel Corp.*[3]

In addition, the trial court's reliance upon cases decided under the Eminent Domain Code (Code)[4] is unwarranted. Evidence of reproduction costs less depreciation is specifically allowed in condemnation cases pursuant to Section 705(a)(iv) of the Code, 26 P.S. §1-705(a)(iv). *See Hoffman v. Commonwealth,* 422 Pa. 144, 221 A.2d 315 (1966).

For these reasons we must conclude that the evidence of construction cost should not have been admitted as a "check" on the determination of fair market value.[5]

Appellants next argue that the trial court erred in relying on figures contained in Appellants' balance sheet to corroborate the Board's determination of fair market value. Over the objections of Appellants'

---

[3] That a property's fair market value may have little to do with the cost of construction is well borne out in a case such as this. Both parties have indicated that the hotel was constructed through favorable, below-market financing offered by quasi-governmental and private institutions as an inducement to downtown development. Such an inducement suggests that the amount of initial investment was not expected to reflect itself in the property's market value.

[4] Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §§1-101 to 1-903.

[5] We note that Section 7(d) of the Act of June 26, 1931, P.L. 1379, *as amended,* now provides that the Board must consider reproduction cost, along with comparable sales and income approaches, when calculating fair market value for assessment purposes. This provision was added in its entirety by Section 4 of the Act of December 13, 1982, P.L. 1165, and applies to appeals initiated after January 1, 1983. Since the appeal in this case was initiated on November 19, 1982, the added provision has no present application.

attorney, evidence was presented establishing that Appellants' balance sheet for 1982 "carried" the property at a figure of $109,600.00 and building at a figure of $4,917,679.99. These figures were relied on by the court as evidence of Appellants' own evaluation of their property's fair market value. A similar issue was recently addressed by our court in the case of of *Appeal of Ames Shopping Plaza*, 83 Pa. Commonwealth Ct. 122, 476 A.2d 1001 (1984). In that case, we considered whether the amount of assets listed as "adjusted basis" on a partnership's federal income tax return is admissible to establish fair market value for tax assessment purposes. We concluded that it was not, noting that the calculation of an adjusted basis from initial costs according to the methods approved by the federal income tax laws does not necessarily lead one to the fair market value of a property. *Id.* at , 476 A.2d at 1004. Similarly, in the present case, the principles of accounting which govern the make-up of a balance sheet may involve calculations of initial costs and depreciation which have no relevance to a determination of fair market value. Clearly, therefore, the fact that an asset is carried at a particular value for accounting purposes does not necessarily establish that this value is also considered as the fair market value. For this reason the balance sheet figures were not relevant to establish fair market value, and should not have been relied on by the court as corroborative of such value.

Appellants also argue that the court erred in relying upon evidence of the value of a garage lease as corroborative of the Board's determination of fair market value. The Wilkes-Barre Industrial Development Authority had leased an adjoining garage to Appellants for a term of thirty years at the rate of one dollar per year. The court concluded that this

garage lease was an indispensable asset when considering the fair market value of the improvement. Appellants agree that the garage lease is indeed an asset to the hotel, but contend that the value of this asset had already been considered in applying the income analysis approach. Appellants offered testimony that the garage was a necessity to a downtown hotel, and that its operation was reflected in the hotel's annual income. Thus, adding the "value" of the garage to the income of the hotel would result in duplicative valuation.

From our reading of the trial court's opinion, however, we cannot conclude that the court "added" the value of the garage lease to the income of the hotel. Rather, the court's reference to the garage lease was intended to recognize that the lease was an appropriate factor for the Board to have used in reaching its determination of fair market value by the income analysis approach. As such, the court's reference to the garage lease was not error.

In summary, we conclude that although the results of the Board's method of determining fair market value were competent and capable of belief, the trial court relied upon certain irrelevant evidence in reaching its conclusion that the Board's evidence was more credible. Since we cannot say that the court would have reached the same conclusion regarding credibility had the corroborating evidence been properly excluded, we must vacate the court's order, and remand for a reconsideration of the relevant evidence.[6]

---

[6] *Compare Bonin Reassessment Appeal*, 65 Pa. Commonwealth Ct. 278, 280-81, 442 A.2d 43, 45 (1982) (evidence of illegal method of assessment does not require reversal where the court actually relied on evidence of proper methods).

ORDER

Now, May 8, 1985, the order of the Court of Common Pleas of Luzerne County, No. 4079-C of 1982, dated July 12, 1983, is hereby vacated and the matter remanded for further proceedings consistent with this opinion.

Jurisdiction relinquished.

Judge WILLIAMS, JR. did not participate in the decision in this case.