# Hutchinson, Appellant, *v.* Kline.

*Taxation—Assessments—Separation of minerals from surface—Unseated lands.*

Where an owner of lands conveys the surface and reserves the minerals, it is his duty to notify the county commissioners of this fact, and if he fails to do so, and thereafter the lands are assessed as to the entire estate as unseated lands, and are sold as such at a tax sale, the owner of the surface may purchase at such sale, and acquire good title to the minerals.

Argued May 7, 1901. Appeal, No. 38, Jan. T., 1901, by plaintiffs, from judgment of C. P. Elk Co., Sept. T., 1897, No. 96, on trial by court without a jury in case of Charles H. Hutchinson, Harry G. Clay and William Hacker, now by substitution William I. Leiper instead of William Hacker, Deceased, Trustees, *v.* M. S. Kline. Before McCollum, C. J., Mitchell, Fell, Brown and Potter, JJ. Affirmed.

Ejectment for land in Jones township.
The case was tried by Mayer, P. J., without a jury.

The opinion of the court was as follows:

This action of ejectment was brought to recover possession of a certain piece of land situate in Jones township, Elk county, containing 2,931 acres, three rods and nine perches, being part of warrant No. 3252 and the western parts of warrants Nos. 3231, 3232 and 3251.

The legal title to the land described in the writ was in the plaintiffs prior to February 13, 1883, and at the time of the bringing of the action of ejectment the legal title to the gas, coal, iron and petroleum was vested in the plaintiffs and would entitle them to recover in this action, unless this title was divested by virtue of a tax sale by the treasurer of Elk county on July 2, 1892, to J. Powell under whom the defendant, M. S. Kline, claims title. The validity of this tax sale so far as the surface of the said tracts of land is concerned, is not disputed, except that it is claimed because of the description of the conveyance by metes and bounds these several tracts compose an entirety and should have been taxed together and not by sepa-

rate warrants.   It is contended by the plaintiffs that the assessments of taxes against these tracts as unseated land should be held to apply only to the surface, which by reason of the reservations in the deeds of conveyance was a separate estate from the mineral rights.

The parties to this suit by agreement filed dispensed with a trial by jury, and it was submitted to the decision of the court under the act of April 22, 1874.

### FINDINGS OF FACT.

It was not shown on the trial that these lands were ever assessed in a body, nor is there any evidence to show that the plaintiffs or any one under whom they claim title paid taxes to Elk county upon the mineral rights reserved, nor returned them for the purpose of taxation in one body.   This the plaintiffs were required to do by the act of March 28, 1806.   If they desired their separate estate to be assessed and taxed separate and apart from the surface, there should have been a severance of this separate estate in the assessment.

But it is claimed that at the time this assessment was made the land was seated and that there was personal property sufficient on the premises to pay the taxes for the years 1890 and 1891.

We have carefully examined the testimony in this case and are of the opinion that the evidence is too vague and indefinite to show that these lands were seated.   The assessments from 1884 to 1891 show that Hamlin & Gilpin were assessed for a saw mill and two dwelling houses and barn, but there was no assessment of any land in connection with these improvements, there are no acres designated in the description, simply a saw mill and improvements.   Nor does the evidence offered show that this assessment to Hamlin & Gilpin applied to either of the warrants in question.   Nor does the evidence show that these taxes in the seated list were paid to the collector, but on the contrary the tax collector of Jones township for the year 1891 was called as a witness, and he testified that he was exonerated from these taxes.   Had there been sufficient personal property on the premises at the time the tax collector had his duplicate he would have been able to collect the taxes, and would not have been exonerated from them; and the presump-

tion is that the tax collector did his duty, and that when he returned this tax as uncollectible it was in accordance with the facts. Even if the saw mill was erected upon one of these tracts the preponderance of the evidence shows that the mill and improvements had been abandoned, and after such abandonment the assessment of the land as unseated would constitute a valid assessment: Gibson v. Robbins, 9 Watts, 156; Negley v. Breading, 32 Pa. 325; Stewart v. Trevor, 56 Pa. 374.

The question of whether a tract of land is seated or unseated depends altogether upon what has been, or is being done upon it; upon the appearance which it may present to the eye of the assessor. As was said in Rosenburger v. Schull, 7 Watts, 390, the assessor has nothing to do with the misapprehensions or mistakes of the occupant; it is his business to return the land as seated if he finds upon it such permanent improvements as indicate a personal responsibility for the taxes. On the other hand, if there be no such improvements he must return it as unseated. Neither is it the business of the assessor to inquire what is the nature of the owner's title: Stoetzel v. Jackson, 105 Pa. 567. From the testimony it appears that some logging was going on upon some parts of these lands. It is not shown upon which tract, and the teams were there only a small part of the year in connection with this logging contract, which consisted in taking lumber from a part of one of the tracts to a railroad siding entirely away from these lands. . . .

A glance at the testimony shows that it is too uncertain and indefinite to fix the character of the land as seated. . . .

The further findings of fact will appear in the answers of the court to the requests made by plaintiff's counsel.

In answers to requests the court found as facts:

1. On and prior to February 13, 1883, the legal title to all of the property described in the writ was in the plaintiffs or their predecessors in trust, as trustees.

2. That on February 13, 1883, the then trustees, by deed, conveyed the lands to Byron E. Hamlin and Emory Gilpin with the following reservation, to wit:

" Reserving and excepting therefrom and thereout unto the said parties of the first part, their heirs and assigns, the gas, coal, iron and petroleum therein and thereon, together with the rights of entry at all times for the purpose of exploring for, bor-

ing, producing, digging, mining and carrying away the same, and the right to divide or subdivide into parts or parcels at pleasure and transfer the same or any part at will, also the right to occupy so much in the vicinity of any wells that may be bored for the production of petroleum as may be needed for dwellings of employees, and also for the buildings and machinery necessary for carrying on the business of exploring for and producing mineral oil or petroleum from the said tract of land, and also the right to take and use from said land all wood suitable for derricks and also necessary for putting down the said wells; the same to be taken in a careful manner, and without waste, but no timber suitable for merchantable use shall be taken."

3. That Hamlin & Gilpin placed their said deed of February 13, 1883, on record in Elk county, August 6, 1886, and immediately caused the lands described in said deed to be assessed to them to the extent of their interest or ownership in said lands.

4. That Hamlin & Gilpin paid the taxes on these lands till 1890.

5. That the said lands were sold by the treasurer of Elk county upon the unseated list for non-payment of the taxes of 1890 and 1891, as assessed to Hamlin & Gilpin, and purchased by Jerome Powell on July 2, 1892.

The following requests were refused, that the land was seated in fact, or if not, that there was sufficient personal property on said lands liable for and from which the taxes could have been collected.

10. That the defendant, M. S. Kline, who now claims title through conveyance to him of the tax titles by Jerome Powell, the purchaser at the treasurer's sale, which conveyance is dated July 20, 1894, was at that time bound by his covenant with O. B. Lay, dated December 1, 1892, to pay the taxes for the years 1890, 1891 and 1892 and all penalties accrued thereon, and had, in effect, on December 1, 1892, received the money of O. B. Lay to pay the same.

11. That Hamlin & Gilpin by contract with Hyde & Thayer of March 20, 1889, had bound themselves to pay the taxes on the lands for ten years from said March 20, 1889, which contract by its terms was a covenant running with the lands and bound the successors in title of Hamlin & Gilpin; and that

the defendant, M. S. Kline, on December 1, 1892, purchased of O. B. Lay, who had succeeded Hamlin and Gilpin in title to the lands described in plaintiffs' writ, and by the terms of his purchase assumed the covenants made by Hamlin & Gilpin with Hyde & Thayer for the payment of the taxes, which covenant bound him to pay all the taxes for ten years from the Hyde & Thayer contract, and which covenant on the part of M. S. Kline was in force at the time he took conveyance of the tax title from Jerome Powell and by the terms of which he was legally bound to pay the taxes of 1890 and 1891, for which the lands had been sold, and under which sale the defendant now claims title.

12. That the assessors of Jones Township, Elk County, in making the assessments for the years 1890 and 1891 of the lands described in the writ, knew at the time of making such assessments that the gas, coal, iron and petroleum in said lands had been severed into a separate estate, and were not then owned by Hamlin & Gilpin, and were not valued in the assessment to them.

### CONCLUSIONS OF LAW.

By the act of March 8, 1806, it is made the duty of the holder of lands to give the commissioners a description of the unseated lands held by him: Williston v. Colkett, 9 Pa. 38. And when the mineral rights were severed from the surface rights the plaintiffs should have given notice of this fact to the commissioners or to the assessor. It was also their duty to give the county commissioners a description of their lands as conveyed by courses and distances if they desired to have them assessed as a whole. The tax laws as to unseated lands treat them entirely in reference to the original warrants when not otherwise directed by the owners. Parts of distinct warrants united in fact by purchase may be returned and assessed by whatever designation the owner may choose, and be held and taxed as a unit. But in order to accomplish this it would be the duty of the owner to furnish the taxing officers with a proper description in order that they may be assessed and taxed as a unit: Haft v. Gephart, 65 Pa. 510.

Having failed to furnish the commissioners with a description of their lands by metes and bounds it was entirely proper for

the assessor to assess them by the surveys on the warrants. The record of the deed creating a separate estate in the minerals would not be notice to the assessor or the commissioners as they were not bound to search or examine the records. The covenants contained in the contract made by Hamlin & Gilpin with Hyde & Thayer of March 20, 1889, and in the deed from Hamlin & Gilpin to O. B. Lay dated November 7, 1889, and the deed from O. B. Lay to M. S. Kline dated December 1, 1892, to pay the taxes assessed against the said lands for the years 1890 and 1891 were personal covenants. There is no obligation existing by reason of these covenants which imposes upon the grantees in these several conveyances the duty of paying the taxes on both estates, surface and minerals. The evident intent and purpose of these covenants was to prevent a sale of the surface on which the timber was growing that was sold by the conveyance to Hamlin & Gilpin. There was nothing in the agreement by Hamlin & Gilpin nor in the covenants contained therein which obligated Hamlin & Gilpin to pay any other taxes than those that would protect Hyde & Thayer in the possession of the timber under their contract. The same may be said of the provisions and reservations on the part of the grantor contained in the deed from Hamlin & Gilpin to O. B. Lay and from O. B. Lay to M. S. Kline. They were for the protection of the title conveyed which only pretended to cover the surface exclusive of the minerals. Lay's deed was executed and delivered long after the surface and minerals had been separated and the two estates created. There was no privity nor any contractual relation existing between Kline and the plaintiffs in this case. The plaintiffs were strangers to all these agreements and covenants. Nor is there such a fiduciary relation existing between the owner of the mineral rights and the owner of the surface rights which will prevent one from buying the estate of the other at a tax sale.

" The owner of mineral rights holding by virtue of a reservation in a deed is neither a tenant in common, nor a joint tenant with the owner of the surface ; each has a separate estate ; each is separately subject to taxation, and there is no equity growing out of the relation which they bear to each other which will prevent one from buying the estate of the other at a tax

sale:" H. B. Powell and J. F. Powell, Appellants, v. John Lantzy and The Blubaker Coal Company, 173 Pa. 543.

The plaintiffs request the court to find the following conclusions of law:

1. That the conveyance from Hutchinson et al. to Hamlin & Gilpin dated February 13, 1883, by reserving the gas, coal, iron and petroleum, etc, created in the grantors a separate legal estate in such gas, coal, iron, petroleum and rights reserved, which separate legal estate was and is the subject of distinct ownership and separate taxation. *Answer:* This request is affirmed.

2. That the separate and distinct estate so created by the reservation in the deed from Hutchinson et al., to Hamlin & Gilpin of February 13, 1883, not having been assessed for the purpose of taxation and not having been returned for unpaid taxes, and not having been advertised for sale by the treasurer of Elk county, no title to the same passed under the deeds from the treasurer of Elk county to Jerome Powell, under date of July 2, 1892, for the lands assessed to Hamlin & Gilpin and sold to Jerome Powell. *Answer:* This request is refused.

3. That the sale by the treasurer of Elk county on July 2, 1892, and his deeds to Jerome Powell in pursuance thereof, conveyed no title whatever to the reserved estate in the gas, coal, iron, petroleum and rights and interest reserved, in the lands described in the plaintiffs' writ, which estate was created by reservation in deed by Collins et al., to Hamlin & Gilpin of February 13, 1883. *Answer:* This request is refused.

4. That the lands described in plaintiffs' writ having been conveyed by the deed of February 13, 1883, and by the Hyde & Thayer contract of March 20, 1889, and by deed to O. B. Lay of November 7, 1889 (all of which are in evidence in this case), as an entirety by metes and bounds, and the same having been treated by the owners as an entirety, a seating of any part is in law a seating of the whole of said lands. *Answer:* Refused.

7. That the defendant, M. S. Kline, being under legal obligation through his covenant to pay the taxes on these lands is estopped from obtaining title thereto through a tax sale, which became effective only by reason of his failure to perform his covenant; especially it appearing from the evidence that he

had in his hands the money furnished by O. B. Lay with which to pay the same fully nineteen months before the time for redemption expired, he is estopped from claiming title to said lands as against any person having any beneficial interest therein. *Answer:* Refused.

9. That said M. S. Kline being by covenant bound to pay the taxes and all penalties accrued thereon, with means furnished him by Lay, his purchase from Jerome Powell was merely a carrying out of his covenant by a payment of the taxes, and inured to the benefit of the plaintiffs who were beneficially interested in the lands. *Answer:* Refused.

It is therefore ordered that unless exceptions are filed within thirty days after the prothonotary has given notice to the plaintiffs and defendant of the filing of this opinion and decision that judgment shall be entered in favor of the defendant for the land described in the writ.

Judgment was subsequently entered for defendant.

*Error assigned* was in entering judgment for defendant.

*George A. Berry* and *E. H. Hanson,* with them *John G. Johnson, E. R. Mayo, G. B. Mayo* and *R. L. Edgett,* for appellants. —The reservation of the oil, gas and minerals did not make the owners of such gas, oil and minerals, tenants in common or joint owners with the owners of the surface; each owned a separate estate in the land: Powell v. Lantzy, 173 Pa. 543; Neill v. Lacy, 110 Pa. 294; Sanderson v. Scranton, 105 Pa. 474; Logan v. Washington Co., 29 Pa. 373; Irwin v. Bank of U. S., 1 Pa. 349; Lillibridge v. Lackawanna Coal Co., 143 Pa. 293; Chartiers Block Coal Co. v. Mellon, 152 Pa. 295; Berwind White Coal Mining Co. v. Clearfield Co., 18 Pa. C. C. R. 545.

The defendant without cost to himself and in violation of his covenant with Lay should not now be allowed to gain a valuable estate in these lands as against any one interested therein: Chambers v. Wilson, 2 Watts, 495; Black on Tax Titles, sec. 273; Coxe v. Wolcott, 27 Pa. 154; Coxe v. Sartwell, 21 Pa. 480; Orr v. Cunningham, 4 W. & S. 294; Laird v. Hiester, 24 Pa. 452; Yocum v. Zahner, 162 Pa. 468; Blood v. Crew Levick Co., 177 Pa. 606; Hall v. Westcott, 5 Atl. Repr. 629; Laton v. Balcom, 6 Atl. Repr. 37.

We claim with confidence that the proven facts in this case, as to the use, occupancy, buildings and residence upon the tract in question were sufficient to stamp it as seated land, if not the whole tract, then at least that part of it embraced in warrants Nos. 3232 and 3251: Skinner v. McAlister, 18 W. N. C. 324; Arthurs v. King, 84 Pa. 525; Arthurs v. King, 95 Pa. 167; Brown v. Day, 78 Pa. 129; Stokely v. Boner, 10 Serg. & Rawle, 254; Kennedy v. Daily, 6 Watts, 269; Watson v. Davidson, 87 Pa. 270; Lackawanna Iron & Coal Co. v. Fales, 55 Pa. 91; Harbeson v. Jack, 2 Watts, 124.

*S. P. Wolverton*, with him *Fred H. Ely*, for appellee.—The land was unseated: Stoetzel v. Jackson, 105 Pa. 562; Everhart v. Dolph, 133 Pa. 628; Heft v. Gephart, 65 Pa. 510; Watson v. Davidson, 87 Pa. 270; Murray v. Guilford, 8 Watts, 548; Greenough v. Fulton Coal Co., 74 Pa. 486; George v. Messinger, 73 Pa. 422; Earley v. Euwer, 102 Pa. 338; Hathaway v. Elsbree, 54 Pa. 503; Holloway v. Jones, 143 Pa. 569; Gibson v. Robbins, 9 Watts, 156; Wallace v. Scott, 7 W. & S. 248; Milliken v. Benedict, 8 Pa. 175; Ellis v. Hall, 19 Pa. 292; Lackawanna Iron & Coal Co. v. Fales, 55 Pa. 98; McArthur v. Kitchen, 77 Pa. 62.

There was no trust relation between plaintiffs and defendant: 4 Kent's Commentaries, *473; Lewis v. Robinson, 10 Watts, 354; Coxe v. Gibson & Hathaway, 27 Pa. 160; Brickell v. Earley, 115 Pa. 473; Bickel's App., 86 Pa. 204; Cross's App., 97 Pa. 471; Blyholder v. Gilson, 18 Pa. 134; McVay v. McVay, 10 Atl. Repr. 178; Jackson's App., 8 Atl. Repr. 870; Silliman v. Haas, 151 Pa. 52; Martin v. Baird, 175 Pa. 540; Hoover v. Hoover, 129 Pa. 201; McKean & Elk Land and Imp. Co. v. Clay, 149 Pa. 277.

PER CURIAM, May 27, 1901:
This judgment is affirmed on the opinion of the learned judge below.