## Day v. Johnson

*H. Robert Hampson,* for plaintiff.
*Murray R. Garber,* for defendant.

WOLFE, *P.J.,* April 5, 1983—This is an action by plaintiff to quiet title to two tracts of land being and situate in Brokenstraw Township, one tract containing 30 acres and the other contiguous tract containing 69 acres. The dispute between the parties arose by reason of plaintiff's grandfather, John A. Day, in executing a conveyance of the premises on April 26, 1923 to one Michael Baran but excepting and reserving the oil, gas and minerals therefrom by utilizing the following language:

"Excepting and Reserving from the above land all the oil, gas and mineral rights, and the right to enter and operate for the same."

Neither John A. Day nor his sole successor to these premises, plaintiff herein, has operated or produced the premises for oil, gas or minerals and the premises have, over the years, been deeded to defendants herein. Plaintiff now seeks to quiet the title to this acreage against the various defendants who are making claim of ownership to the oil, gas and minerals.

Defendants' basis for their claim is by reason of a tax sale in 1934 based upon the 1931 assessment to the premises noted as "100 acres, Brokenstraw Township" and as sold by the Warren County Treasurer to their predecessor in title.

Both parties rely upon the tax sale law involving the taxation of unseated property and the duty of the county treasurer to give the owner proper notice of tax sale for the payment of delinquent taxes and the owner of property to inform the commissioners

of the taxable estate. Among cases cited by plaintiff are Sagamore Big Game Club, 166 F. Sup. 465, Bannard v. New York State Natural Corp., 448 Pa. 239, 293 A.2d 41 (1972), holding where there is a severance of the oil and gas rights from the surface the interest of the subsurface rights is unseated for taxation purposes if no improvements are made thereon for oil and gas operations.

Defendant relies on Rockwell v. Warren County, 228 Pa. 430, 277 Atl. 665 (1910) in that where there is a severance of the subsurface from the surface if in fact there is no oil or gas in existence there is no estate to tax.

In the instant case the parties agree there has been no operations for oil and gas since the creation of the exception and reservation. The interest created by the exception and reservation was never assessed for taxation purposes and if not so assessed there obviously could be no sale thereof for delinquent taxes. The sole purpose of sale of delinquent taxes is to collect the taxes for the operation of the county and not to deprive the owner of his property. The assessment for tax purposes of the subsurface rights is on the production of the oil and gas from the subsurface not upon an estate where it cannot be determined the valuation thereof. In our opinion the mere creation of an exception and reservation without the operation for the removal of the minerals does not create a taxable estate per se and would not until production is had therefrom and properly assessed in value. If this were not so the taxing authority could simply assess taxation on speculation as to value. The cases defendants rely upon Mathies Coal Company, 435 Pa. 129, 255 A.2d 906 (1969) the property was subject to coal operations and as such is a taxable estate and assessable for taxation despite the fact the owner of the coal inplace may

not have the authority to remove it thus forming a component to fix the total assessed of the coal lands.

Defendants further rely on Gordon v. Harley, 165 Pa. Super. 433, 68 A.2d 439 (1949) for the legal tenet of the owners of unseated land have a duty to furnish the commissioners with a statement of their ownership (72 P.S. §5020-409). And Miller v. Leopold, 23 Pa. Commw. 483, 353 A.2d 65 (1975) which holds a treasurer's deed may not be defeated except by fraud or want of authority to sell. Neither of these cases dealt with an exception and reservation of the subsurface property. Plaintiff next relies upon Hutchinson v. Kline, 199 Pa. 564, 49 Atl. 312 (1901). There, the court held where there is a severance of the surface from the subsurface the mineral owner has a duty to notify the county commissioners of this fact, "and if he fails to do so, and thereafter the lands are assessed as to the entire estate as unseated lands, and are sold as such at a tax sale, the owner of the surface may purchase at such sale, and acquire good title to the minerals". A reading of the facts of that case appears to support defendants' position, to-wit, where there is a severance of the property creating separate tracts of land each is subject to separate assessment and taxation as the then existing Act of March 28, 1806 provided but which has been repealed. The facts of that case do not specifically disclose that whether or not the subsurface rights were under operation. It was plaintiff's contention that the assessment of taxes against the tracts as unseated land should have been to apply only to the surface which the court rejected. Notwithstanding, the case of Rockwell v. Warren County, supra, recognized the holding of Hutchinson v. Kline, supra, and cited it with other cases for the holding where there is a severance of the oil, gas and minerals from the surface a separate ownership

of these minerals constitutes an interest or estate in land. The court went on to say this:

"While the question has not been raised here it is important to keep in mind the fact that the right to tax depends upon the valuation and assessment of a definite estate in land. If there is no land there is nothing to tax, and this principle applies as well to minerals as to the surface. Because there may be a reservation of oil or gas by the grantor of the surface, or there may be an expressed grant of all the oil or gas underlying one or several tracts of land, it does not follow that in point of fact there is any such estate in existence. When the assessor goes upon the land it is his duty to make a valuation upon information or knowledge which will furnish some definite fixed basis of valuation. A mere naked reservation of oil or gas in a deed without any other facts to base a valuation upon is not sufficient to warrant the assessment of taxes. Development in the neighborhood, sales of oil or gas lands in close enough proximity to add value, or any other element of value which may form a basis of valuation may be taken into consideration by the assessor or other taxing authority, but it should always be borne in mind that real estate is the thing being dealt with and the oil and gas are considered real estate and if there be no oil or gas then there is no real estate to be taxed."

In the instant case although no words of inheritance were used in the exception or reservation none is required to survive the one creating the separate estate, to-wit, decedent, John A. Day. Mandle v. Gharing, 256 Pa. 121, 100 Atl. 535 (1917). Here, the court discussed the technical difference between an exception and reservation and finding for practical purposes there is no substantial difference but rather the intent of the parties must be exam-

ined and if it appears it was the grantor's intent to carve out a separate estate in oil and gas in the lands granted such then is the creation of a separate estate which never passes to the grantee.

Here, John A. Day created a separate estate distinct from the surface by his exception and reservation albeit unseated land it was never produced and therefore never assessed or charged with taxes and consequently there could be no delinquency thereof that could have been sold by the treasurer in 1934.

For these reasons we enter the following

## ORDER

And now, this April 5, 1983, judgment is entered in favor of plaintiff and against defendants and defendants have no right, title and interest to the oil, gas and minerals in the following described premises, to-wit:

Beginning at a red oak at the northeast corner of land formerly of August Johnson and running thence east 65 rods to the center of the public road leading from Murray Hill; thence south 14 degrees east along the center of said road 24 rods to the angle of said road; thence south 20 degrees east along the center of said road 26 rods to an angle; thence south 37 degrees east 34 rods to the third angle in the road; thence south 18 degrees 30 minutes east still by the center of said road 4 rods; thence westerly 132 rods to a post in the east line of lands formerly of August Johnson; thence north by the last mentioned land 118 rods to the place of beginning, and containing 69 acres of land, be the same more or less; and

On the north by land formerly of C. M. Allen; on the east by the Murray Hill Road; on the south by land formerly of C. Smith; on the west by land of G.

Danielson; and containing 30 acres of land, be the same more or less.

In the event no exceptions were filed, upon praecipe, the prothonotary shall enter the within decree on the judgment docket as a final decree.

WOLFE, *P.J.*, June 1, 1983—Defendants have filed timely exceptions to our opinion and order of April 5, 1983 which have been argued.

Seven exceptions were filed and which basically raises the issue of the tax sale consequence of an owner of a fee simple sub-surface interest failure to inform the treasurer or assessor of the reservation. We addressed this issue in our opinion holding, because there was no development of the reservation for oil and gas and, notwithstanding such a reservation is a taxable entity as unseated land, nonetheless no assessment could be made due to lack of production. It is now argued the assessor could ascertain market value of the sub-surface property in the nature of oil and gas by a determination of the market value of surrounding and adjoining properties. It is argued this is not conjecture or speculation on the assessor's part because the landowner could protest the valuation and even if determined to be nominal the value could be thus determined. We find this a novel argument, however, we believe logic dictates its rejection.

Customarily, as defendant recognizes, the taxing authorities have historically taxed only oil and gas actually removed from the sub-surface. In our opinion the reason for this is a logical one in that no separate entity comes into being until the oil and gas is brought to the surface and a valuation placed upon it in terms of market value. For an assessor to go upon the surface and declare sub-surface value is an exercise of clairvoyance. The suggestion that a

study of adjoining production removes the assessment from speculation ignores the nature of oil and gas. Simply because an adjoinder may be productive it does not follow the subject premises also will have the same production, if any. To argue the subsurface owner could object to an arbitrary assessment is to place the burden of proof on the sub-surface owner of the value of the oil and gas which is equally clairvoyant. This argument also does not consider the taxing authorities did, in fact, tax the property as a complete entity without consideration to severance thereby realizing its entire valuation for taxation purposes. The dispute in the instant case is between the surface and sub-surface owner as contra to the taxing authorities and plaintiff.

Finally, it is argued the mere passage of time prevents plaintiff from claiming any right to the oil and gas. We reject this argument as it is now well settled passage of time cannot per se adversely affect one's property rights irrespective of how long that period may be.

For these reasons we enter the following

## ORDER

And now, this June 1, 1983, defendants' exceptions are dismissed in toto and the prothonotary is directed to enter final judgment in favor of plaintiff and against defendants.