## Cornwall Mountain Investments L.P. v. Thomas E. Proctor Heirs Trust

C.P. of Lycoming County, No. 11-00,718

ANDERSON, *J.*, Aug. 4, 2014—Before the court is the motion for partial judgment on the pleadings filed by plaintiff Cornwall Mountain Investments, L.P. on January 14, 2014, joined in by plaintiff Range Resources — Appalachia, LLC on March 14, 2014. Argument was heard March 28, 2014. As responses to the motion raised the possibility that indispensable parties had not been joined, further pleading was directed on April 3, 2014, and a further argument held May 5, 2014. Thereafter, by order of that date, plaintiffs were directed to join the Margaret O.F. Proctor Trust as a defendant and that defendant was then given an opportunity to respond to the motion. That response was filed July 1, 2014, and the matter is now ripe for decision.

In its second amended complaint, plaintiffs seek to quiet title to the oil, gas and mineral estate (hereinafter "mineral estate") in certain land in Lewis and Cogan House Townships.[1] Plaintiffs contend the mineral estate was severed from the surface by a reservation of the rights by Thomas E. Proctor in a conveyance to the Elk Tanning Company in 1894. Plaintiffs further contend that the

---

1. It is undisputed that plaintiff Cornwall Mountain Investments, LP, owns the surface estate.

mineral estate was separately assessed for taxes in 1930 and 1931 and that those taxes were not paid and thus the estate was sold at a tax sale in 1932. In count I, plaintiffs claim title to the property by way of treasurer's deeds issued following that tax sale.[2] In count II, plaintiffs claim title through adverse possession.

In the instant motion, plaintiffs seek judgment on count I, based on the pleadings which set forth the facts of the tax sale in 1932 and the issuance of the deeds into Cornwall Mountain Club, its predecessor in interest, the fact that the estate was never redeemed and the fact that no action for its recovery was brought within the five-year period after the sale. Those in opposition to the motion have raised various objections, all of which the court considers legal arguments, none of which raises issues of fact. After careful consideration of all arguments, the court finds that none of the objections has merit and plaintiffs are entitled to judgment as a matter of law.

First, an objection is raised by the Thomas E. Proctor Heirs Trust that the Lycoming County taxing authorities lacked the authority to assess and tax the mineral estate, citing *Independent Oil and Gas Association of Pennsylvania v. Board of Assessment Appeal of Fayette County*, 814 A.2d 840 (Pa. 2002), which held that there is no statutory authority in Pennsylvania authorizing the imposition of a real estate tax on oil or gas interests. The lack of such authority, argues the Trust, rendered

---

2. There were five separate deeds issued, respecting Warrants 5753, 5666, 5751 and 5668 in Lewis Township, and Warrant 5666 in Cogan House Township.

the assessment invalid and the tax sale void. Further, in response to plaintiffs' reliance on *Oz Gas Limited v. Warren Area School District*, 938 A.2d 274 (Pa. 2007), which held that *IOGA* was not to be applied retroactively, the Trust contends that Oz's limitation on retroactivity should be applied to requests for refunds of taxes only (the factual scenario in *IOGA*), and that *IOGA* should be applied retroactively to invalidate assessments and render tax sales void. The court does not read *Oz* so narrowly, however. The Supreme Court acknowledged that retroactive application of *IOGA* would have "potentially devastating consequences" to taxing entities. The consequences to parties who purchased property at tax sales would be no less devastating, as those interests would be lost, oftentimes after much has been invested. Between the party who purchased a property under what was believed to be a valid process, and the party who lost the property due to his failure to pay what was believed to be a valid tax, the court believes the equities weigh in favor of the purchaser. Therefore, *IOGA* will not be applied retroactively to invalidate the sale and the Trust's objection on this basis has no merit.

The Trust next objects to the sale on the grounds that lack of production resulted in no basis on which to value the mineral estate and thus no basis on which to assess the tax, rendering the sale void, citing *F.H. Rockwell & Company v. Warren County*, 77 A. 665 (Pa. 1910), and *Herder Spring Hunting Club v. Keller*, No. 2008-334 (Centre County, September 29, 2010). In reversing the trial court in *Herder Spring Hunting Club*, however, the

Superior Court noted such a challenge as a "collateral attack" on "overvaluation" and stated that such an attack was not allowed fifty years later, citing *Bannard v. New York State Natural Gas Corporation*, 293 A.2d 41 (Pa. 1972). *Herder Spring Hunting Club v. Keller*, 2014 Pa. Super. LEXIS 699 (2014). Here, the attack comes eighty years later. This objection is thus also without merit.

Objection is also based on the fact that the assessments at issue referred only to "mineral rights" and it is argued that under the *Dunham* Rule,[3] oil and gas were thus not included in the assessment and the subsequent treasurer's deeds. In *Bannard v. New York State Natural Gas Corporation, supra*, however, the court specifically held that the rule does not obtain in a tax sale as "the deed is based on the assessment and conveys the interests in land which are properly included within the assessment", and also that an assessment of "minerals only" includes the entire estate owned by the party assessed. While the Trust argues that *Bannard* has been called into question by the subsequent holding in *Butler v. Charles Powers Estate*, 65 A.3d 896 (Pa. 2013), which upheld the *Dunham* rule in a direct attack, the court in *Butler* was careful to refer only to "private deed" transactions. Where the underlying estate is adequately described in the owner's chain of title, it makes no sense to require a showing of the parties'

---

3. *Dunham & Shortt v. Kirkpatrick*, 101 Pa. 36 (1882). "The rule may be briefly stated: if, in connection with a conveyance of land, there is a reservation or an exception of 'minerals' without any pecific mention of natural gas or oil, a presumption, rebuttable in nature, arises that the word 'minerals' was not intended by the parties to include natural gas or oil." *Bannard v. New York State Natural Gas Corporation*, 293 A.2d 41, 48 (Pa. 1972).

intent in a tax sale of that estate. Therefore, this objection is also without merit.

The Trust finally objects by asserting that there were two separate reservations at the time of the tax sale, one made in 1867 by Clement Biddle of "all of the premises' ores of iron, lead, and copper and ¾ of all minerals, coal and oils", and one made in 1894 by Thomas E. Proctor of "all of the premises' gas rights and ¼ of the premises coal, oil and mineral rights."[4] Since the tax sale purported to sell "mineral rights", the Trust argues that the rights actually sold were those reserved by Biddle and not those reserved by proctor. This argument is faulty for several reasons. First, it is based on the incorrect assumption that the Biddle reservation remained viable in 1932. The record shows, however, that the Biddle reservation was wiped out by a tax sale of the surface estate in 1890.[5] Second, the proctor reservation is actually of "*all* of the natural gas, coal, coal-oil, petroleum, marble, and all minerals of every kind and character." *See* The Thomas E. Proctor Heirs Trust's answer to plaintiff's second amended complaint, paragraphs 73.10-12, and deed between Thomas E. Proctor and Emma H. Proctor and the Elk Tanning Company dated October 2, 1894, attached as exhibit 5 to the answer (emphasis added). Third, the assessor's records show the estate being taxed and sold as owned by "Thomas E. Proctor & Heirs", not Biddle. This final objection is therefore meritless as well.

---

4. These descriptions are quoted from the trust's brief in opposition to the motion, page 45, not from any deed.

5. This conclusion will be discussed *infra*, in response to the objections raised by the Margaret O.F. Proctor Trust.

Objections are raised by Pennlyco, Ltd.[6] that (1) no assessment was made on the mineral rights in Warrant 5753 in 1930 and thus the sale was for 1931 taxes only, (2) the tax sale of 1932 was held less than one year after the 1931 tax became due and payable, and (3) this defect in procedure rendered the sale void and thus subject to attack even after the redemption periods. The court finds no merit in either of the first two contentions and therefore need not reach the third.

Pennlyco's assertion that no assessment was ever made on the mineral estate in 1930 is based on the fact that in the 1931 assessment record, the relevant entries (of lands owned by "Proctor/Thomas E. & Heirs") are located under the words "Mineral Rights Only" but in the 1930 record, those words are missing. As Pennlyco itself points out, however, the "assessment records show a consistent pattern of assessment of unseated land for both the surface and the mineral ownership. Each township is listed alphabetically, and under each township is a listing: first of each warrant, with the name of the purported owner, then, at the end of each township, for those warrants where the mineral rights had been separated from the surface estate, under the heading "Mineral Rights", each warrant is listed with the name of each purported owner of the warrant's mineral estate." *See* Pennlyco's brief in opposition to the motion, page 7-8. This pattern was followed in 1930 and the four lands of Thomas E. Proctor & Heirs are listed at the end, following the previous listing of those same four lands showing ownership by Cornwall Mountain Club. It

6. Pennlyco asserts a claim to Warrant 5753 in Lewis Township.

is obvious, in spite of the lack of the heading "Mineral Rights Only", that mineral rights are being assessed, based not only on the duplicate listing but also on the difference in the rate assessed: Cornwall Mountain Club is assessed at $1.00 per acre, and Proctor is assessed at $.50 per acre. Further, the Assessor's Return for 1930[7] does list the estate at issue under the heading "Mineral Rights". *See* Cornwall Mountain's brief in reply to Pennlyco's brief in opposition, at exhibit "L". Thus, the 1930 assessment *was* actually made and the sale for non- payment of 1930 taxes, was proper.

In any event, even if the sale was for non-payment of 1931 taxes only, that sale was held more than one year after the tax became due and payable. Pennlyco contends that the tax did not become due and payable until August 31, 1931, when the Commissioners certified the 1931 assessment to the Treasurer. This contention is without merit. As the court made clear in *Ellis v. Houseknecht*, 57 Pa. Super. 55 (1914), taxes are due and payable *when levied and assessed*; certification is not the relevant date. In the instant case, the tax was levied on January 5, 1931, as noted in the Commissioners' Minute Book, *see* Cornwall mountain's brief in reply to Pennlyco's brief in opposition, at exhibit "J", and was assessed on May 4, 1931, when the Tax Assessor returned the Assessment Book to the Commissioners. *See Id.,* at exhibit "N". The sale was held on June 13, 1932, more than one year after the levy and assessment. The sale was thus valid, and

---

7. This is a separate document from the assessor's record, and the court assumes the Record is compiled from all the various returns made from each township.

Pennlyco's objection on this basis has no merit.[8]

Finally, objections are raised by the Margaret O.F. Proctor Trust, but most of those objections are identical to objections raised by others and previously discussed and/or are based on the assumption that the Biddle reservation, referred to above, continued to exist at the time of the 1932 tax sale. As noted above, that interest was lost by way of a tax sale in 1890. The records show that following Biddle's 1867 reservation of "all ores of iron, lead, copper and other minerals … and also the three-fourths part of all mineral coals and all oils",[9] and after various conveyances of the surface, the surface estate came into the hands of one Harriet Land, who allowed the premises to be sold for unpaid taxes on June 9, 1890.[10] The property was not redeemed.[11] The mineral estate reserved by Mr. Biddle had never been reported or separately assessed and thus was lost in this sale. *See Powell v. Lantzy*, 34 A. 450 (Pa. 1986); *Hutchinson v. Kline*, 49 A. 312 (Pa. 1901); *Herder Spring Hunting Club v. Keller*, 2014 Pa. Super. LEXIS 699 (2014). Thus, any objection which relies on the continued existence of the Biddle reservation is without merit.

The Trust also claims boldly that "the heirs of Thomas E. Proctor did not receive notice and the opportunity

---

8. As noted previously, since the court did not find the sale to be void, it need not address the argument that the redemption periods do not apply.

9. *See* plaintiff Cornwall Mountain's Response to defendant Thomas E. Proctor Heirs Trust's Factual Pleading, filed May 2, 2014, at exhibit "M".

10. *See* plaintiff Cornwall Mountain's Response to defendant Thomas E. Proctor Heirs Trust's Factual Pleading, filed May 2, 2014, at exhibit "N".

11. *Id.*

to be heard before they could be deprived of their property interests, pursuant to the U.S. and Pennsylvania constitutions" and that "the Treasurer of Lycoming County who appeared before the Court of Common Pleas and acknowledged the Tax Sale Deeds ... was convicted of embezzlement and forgery and falsification of tax documents" and that "[t]he Treasurer's wrongful acts in the course of his official duties shed further doubt on the validity of the tax sale." *See* Margaret O.F. Proctor Trust's response in opposition at p. 7. The law requires, however, that the court "presume that all actions ... that were required to be taken were taken", "failing any *affirmative proof* to the contrary". *Herder Spring Hunting Club*, *supra*. The Trust has offered no proof whatsoever that the sale was not held in accordance with the requirements of the act under which the property was sold and therefore the court will assume that it was. These claims, therefore, also have no merit.

Finally, the Trust argues that the only appropriate remedy for failure to pay taxes on unseated lands was four-fold taxation and not title divestiture. As noted by the Trust, the *Herder Springs* court rejected this argument.[12] This court will therefore not address the argument further.

Since none of the objections raised by any party has convinced this court that plaintiffs are not entitled to judgment as a matter of law, the court enters the following:

## ORDER

---

12. The Trust notes that the argument is being raised only to preserve the matter for further appellate scrutiny".

And now, this day of August 2014, for the foregoing reasons, plaintiffs' motion for partial summary judgment is hereby granted.